OPINION
{¶ 1} Lizzie Johnigan was charged with telecommunications harassment, in violation of R.C. 2917.21(A)(1); making false alarms, in violation of R.C. 2917.32(A)(2); and making false alarms, in violation of R.C.G.O. 137.12(A), all misdemeanors of the first degree, stemming from a 911 disconnect call to the Dayton Police Department. A bench trial was held in the Dayton Municipal Court, Criminal Division. The court granted Johnigan's motion for acquittal as to the two false alarm charges but found her guilty of telecommunications harassment. The trial court sentenced Johnigan to 180 days of incarceration, 160 days of which were suspended. She was further sentenced to supervised probation for a period of one year. The sentence was stayed pending appeal. Johnigan appeals from her conviction.
 {¶ 2} The state's evidence established the following facts:
 {¶ 3} At 7:27 p.m. on September 24, 2002, the Dayton police dispatch received a telephone call from telephone number 262-3094. That number was registered to a Daroyl Goodman at 3201 Palmerston Avenue in Dayton, Ohio. The caller hung up the telephone without saying anything. In particular, the caller failed to identify himself or herself or to state the nature of the emergency.
 {¶ 4} The Dayton police consider a 911 disconnect call to be a high priority call. When an individual calls 911 and hangs up, a crew is dispatched within two minutes of receiving the call. Officer Douglas George was dispatched to the Palmerston address, and he arrived within a few minutes of receiving the dispatch. Because at least two officers must respond to a 911 disconnect call, another crew was also dispatched.
 {¶ 5} Upon arrival, Officer George spoke with Johnigan, who resided at the residence with her son, Eddie Safford. Johnigan had rented the residence for approximately five or six years from Goodman. Officer George asked her if she was okay and if she had dialed 911. Johnigan stated that she was fine, and indicated that she had not called 911. Johnigan informed the officer that there was no emergency, medical or otherwise. Johnigan later told the officer that she was having trouble with her telephone. Officer George checked the residence and determined that Johnigan was the only one there.
 {¶ 6} Approximately two minutes after Officer George arrived, Johnigan's son arrived at the residence on his bicycle. Officer George was informed by another officer that Safford had a habit of calling 911 and riding up on his bike. The officers shortly learned that there was an outstanding warrant for Safford for making false alarms. Safford was placed under arrest. The officers did not question Safford about whether he had made the 911 call to which they had responded or whether he was at his home at the time the call was made.
 {¶ 7} On appeal, Johnigan asserts two assignments of error, which we will address together.
 {¶ 8} "The trial court erred by overruling appellant's motion for acquittal since the state failed to provide sufficient evidence to convict her of Telephone Harassment."
 {¶ 9} "The trial court erred by denying appellant's motion to acquit at the close of the case since the conviction was against the manifest weight of the evidence."
 {¶ 10} In her assignments of error, Johnigan claims that the trial court improperly denied her motion for judgment of acquittal on the telecommunications harassment charge and that her conviction was against the manifest weight of the evidence. She contends that the state presented no evidence that she had made the call or that the telephone had been under her control when the call was made. She further argues that the state failed to establish that the call had been made with the purpose to harass or abuse the recipient. Johnigan notes that there was some evidence indicating that her son may have made the 911 call since he had a history of such conduct.
 {¶ 11} Criminal Rule 29(A) provides that the trial court shall enter a judgment of acquittal on one or more offenses charged in the indictment if the evidence is insufficient to sustain a conviction of such offense or offenses. "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380,386, 678 N.E.2d 541, 1997-Ohio-52, citing Black's Law Dictionary (6th Ed. 1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372, citing Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 12} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175.
 {¶ 13} The telecommunications harassment statute, R.C. 2917.21(A)(1), provides that "[n]o person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be madefrom a telecommunications device under the person's control, to another, if the caller * * * [f]ails to identify the caller to the recipient of the telecommunication and makes the telecommunication with purpose to harass or abuse any person at the premises to which the telecommunication is made, whether or not actual communication takes place between the caller and a recipient." (emphasis added).
 {¶ 14} At trial, Johnigan moved for dismissal of the charges, pursuant to Crim.R. 29. She argued that the prosecutor had not proved that Johnigan was the individual who had made the 911 disconnect call. She further argued that there was no evidence that she was the only one at home at the time the call was made. In addition, Johnigan emphasized that Safford also resided at 3201 Palmerston Avenue and, thus, the telephone was not under her control at all times. In response, the state asserted that under R.C. 2917.21(A)(1), it did not have to establish that Johnigan herself placed the 911 telephone call. The state also asserted that because Johnigan was alone at her home at the time the police officers arrived, it had presented sufficient evidence under the false alarm statutes.
 {¶ 15} In granting Johnigan's Crim.R. 29 motion as to the false alarm claims, the trial court appears to have concluded that the state had failed to provide sufficient evidence that Johnigan herself had made the 911 call at issue. R.C. 2917.32(A)(2) provides that no person shall "[k]nowingly cause a false alarm of fire or other emergency to be transmitted to or within any organization, public or private, for dealing with emergencies involving a risk of physical harm to persons or property." Thus, under this statute, the state must have been able to prove beyond a reasonable doubt that Johnigan herself was involved in making the 911 call. The fact that the trial court acquitted Johnigan of this charge suggests that it concluded that she had not placed the call.
 {¶ 16} Although the elements of R.C. 2917.21(A)(1) and R.C.G.O. 137.12(A) are not identical, R.C.G.O. 137.12(A) provides that "[n]o person shall use or allow the use of a telephone for the purpose of calling the Emergency 9-1-1 Telephone System other than in an emergency situation." (emphasis added). Thus, we see no substantive difference between R.C. 2917.21(A)(1) and R.C.G.O. 137.12(A) as to the factual issues presented in this case, and thus no justification for an acquittal on one charge but not on the other. However, we note that the state had only argued that it was irrelevant under R.C. 2917.21(A)(1) if Johnigan had actually placed the calls. It follows that the trial court probably intended the remaining, undismissed telecommunications harassment charge to be limited to the theory that Johnigan "knowingly permitted" the 911 disconnect call to be made from a telephone under her "control."
 {¶ 17} Upon review of the record, the state has provided sufficient evidence that the telephone was under Johnigan's control. The telephone call was made from Johnigan's residence, and it was installed by the landlord for her use. Although it is undisputed that Safford also resided at that home and also had control over the telephone, Johnigan's control is not diminished by that fact. The state likewise presented sufficient evidence that the telephone call was made with the purpose to harass or abuse 9-1-1 services. There is an extensive history of 911 calls from the property, none of which involved an emergency. As was the pattern, there was no emergency at the time that Officer George arrived. It is undisputed that disconnect 911 calls are given a high priority and that when such calls are false alarms, there is an inherent waste of time and effort on the part of the Dayton police. The court could reasonably infer that the 911 disconnect call at issue was made for the purpose of harassment or abuse.
 {¶ 18} We find, however, that there is insufficient evidence that Johnigan "knowingly permitted" another individual, such as her son, to place the call. As emphasized by Johnigan, there is no evidence as to whether Safford — or anyone else other than Johnigan — was at the address at the time the telephone call was made. Although Safford rode up to the home on his bicycle within minutes of the police officer's arrival, he was never asked whether he had been at home and had placed the call. Daroyl Goodman testified that he did not live at the address, that he was not there on September 24, 2002, and that he did not make the call. Moreover, Officer George did not ask Johnigan whether anyone else was at the residence at the time the call was made. The fact that Johnigan changed her statement to the police officer, first stating that she did not make the phone call and then later indicating that "she was having phone trouble," does not lead to an inference that she had knowingly permitted someone to make the 911 disconnect call. Moreover, even if we were to assume that Safford had made the call, it is undisputed that Safford resided at the residence with Johnigan, and there is no evidence that Johnigan knew that he was placing the 911 call and permitted it to occur. Accordingly, we find insufficient evidence that Johnigan engaged in telephone harassment, in violation of R.C.2917.21(A)(1), by permitting the 911 disconnect call to be made.
 {¶ 19} Although we have concluded based on this record that the trial court found that the evidence was insufficient to establish that Johnigan herself placed the call, we have done so based on inferences from the court's ruling on the Crim.R. 29 motion. If the court did not intend to restrict the R.C. 2917.21(A)(1) charge to her having "knowingly permitted" the call to be placed, we would conclude that a conviction based on Johnigan having made the 911 disconnect call was against the manifest weight of the evidence. There was undisputed evidence that Safford's son had a habit of making 911 calls and disconnecting. The officers at the scene were aware that Safford "evidentally [sic] likes to call 911 and ride his bike." As was his habit, on September 24, 2002, Safford rode up on his bike within minutes of the officers' arrival. Johnigan initially told Officer George that she had not placed the call. The fact that she later said that she was having difficulties with her phone does not lead to the conclusion that her prior statement was untruthful. Upon review of the entire record and weighing the evidence and all reasonable inferences, we cannot conclude that the state met its burden of establishing beyond a reasonable doubt that Johnigan had placed the harassing call. Accordingly, in our judgment, Johnigan's conviction on that basis under R.C. 2917.21(A)(1) would be against the manifest weight of the evidence.
 {¶ 20} Johnigan's first assignment of error is sustained. The second assignment of error is overruled as moot.
 {¶ 21} The judgment of conviction for telecommunications harassment, in violation of R.C. 2917.21(A)(1), will be reversed.
Fain, PJ. and Brogan, J., concur.