[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Dent*, Slip Opinion No. 2020-Ohio-6670.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6670

THE STATE OF OHIO, APPELLANT, *v*. DENT, APPELLEE.

THE STATE OF OHIO, APPELLANT, *v*. WALKER, APPELLEE

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Dent*, Slip Opinion No. 2020-Ohio-6670.]

*Criminal law—R.C. 2923.32—Engaging in a pattern of corrupt activity—The existence of an enterprise is established by showing that the organization is fully operational and engaging in a pattern of illicit activity—The time frame for the commission of a pattern of criminal conduct is sufficient when the evidence shows that the corrupt activity is neither isolated nor so closely connected to be considered a single offense—Court of appeals' judgment reversed in case No. 2019-0651—Court of appeals' judgment reversed in case No. 2019-0654 and cause remanded.*

(Nos. 2019-0651 and 2019-0654—Submitted February 26, 2020—Decided December 16, 2020.)

APPEALS from the Court of Appeals for Franklin County,

No. 17AP-592, 2019-Ohio-1510, and No. 17AP-588, 2019-Ohio-1458.

_____

**O'CONNOR, C.J.**

{¶ 1} In these consolidated discretionary appeals, we consider whether appellant, the state of Ohio, presented evidence sufficient to support the convictions of Alvin C. Dent Jr. and William L. Walker Jr. (collectively, "appellees"), for the felony offense of engaging in a pattern of corrupt activity under R.C. 2923.32. Because we conclude that it did, we reverse the judgments of the Tenth District Court of Appeals.

**Factual and Procedural Background**

{¶ 2} After a joint jury trial, Dent and Walker were both found guilty of engaging in a pattern of corrupt activity, possessing cocaine, illegally manufacturing drugs, and trafficking in cocaine. The convictions for engaging in a pattern of corrupt activity are the focus of this consolidated appeal. A third individual, Drakkar Groce, was also convicted in the same trial. Groce's conviction is the subject of a separate but related appeal pending before this court in case No. 2019-0594.

{¶ 3} At the joint trial, Detective Lawrence Gauthney of the Columbus Police Department testified that he began observing a house on Greenway Avenue in response to citizen complaints that he had received around February 2016. As a result, he conducted two to three "spot checks" during which he observed foot traffic at the house consistent with "an up-and-running drug house." More specifically, he observed a high volume of individuals who knocked and entered the house like visitors, but stayed only five to ten minutes before leaving. He testified that in his experience, this was activity consistent with the sale of drugs from the house.

{¶ 4} Gauthney testified that on March 11 and 15, he conducted visual surveillance of the property for over an hour each time. Gauthney's surveillance

reports were admitted into evidence, and he testified again that the activity at the house—specifically, a high volume of foot traffic in and out within a short period of time—was what he had consistently observed during each spot check. Additionally, during the March 15 surveillance, Gauthney observed Walker enter through the back door of the house but did not see him leave during the approximately one and one-half hours that Gauthney had observed the house.

{¶ 5} On March 28, Gauthney arranged for a confidential informant to purchase what Gauthney believed to be crack cocaine from someone in the house. Following this buy, Gauthney obtained a no-knock warrant to search the house.

{¶ 6} When the warrant was executed on March 29, neither appellees nor Groce were apprehended in the house, but three other individuals were. The police recovered items from the house, including small plastic bags containing cocaine, electronic scales containing cocaine residue, a glass measuring cup containing cocaine residue, as well as multiple firearms and ammunition located throughout the house. During the search of the house, the police also recovered video recordings from a camera that was located in the house's kitchen containing footage of appellees, Groce, and other individuals. Gauthney determined that the recorded footage covered a single date—March 29—and lasted for a period of over four hours.

{¶ 7} From the videos, Gauthney drafted an investigative report in which he described what he observed at various portions of the videos. This report and portions of the actual videos were admitted into evidence. In addition, Gauthney testified as to what he believed the videos showed while the videos played for the jury. In summary, Gauthney testified that the camera recorded appellees and Groce conducting various activities with what Gauthney believed to be cocaine, including "cooking" it to make crack cocaine (by heating a mixture of cocaine, baking soda, and water), weighing and bagging the drug, selling it, and exchanging large amounts of money.

{¶ 8} More specifically, the videos show Dent handling and weighing multiple small plastic bags of a white substance believed to be crack cocaine. Dent is present while Groce "cooks" crack cocaine using a microwave. Dent also exchanges large stacks or rolls of money with others in the house, including Groce and Walker. At one point, Dent—with Groce's help—adjusts the camera in the kitchen for several minutes.

{¶ 9} The videos show Walker handling small plastic bags of crack cocaine and exchanging large amounts of money with Dent. He also prepares crack cocaine using a measuring cup, baking soda, and the microwave. He exchanges a small bag containing what appears to be crack cocaine for money with unknown individuals. And then he goes back to bagging up crack cocaine at the kitchen table.

{¶ 10} The videos also show Groce selling what appears to be crack cocaine to several individuals who appear to stay only a short time after he lets them into the house. He accesses kitchen cabinets in which portions of crack cocaine appear to be stored, weighs the substance and places it in smaller plastic bags. In addition to "cooking" crack cocaine, he handles large "cookie" size portions of crack cocaine and splits those larger portions into smaller-sized portions and places the smaller portions in bags. He handles money in the kitchen from others and places it in his wallet.

{¶ 11} In addition to these activities that relate to the underlying offenses of possessing, illegally manufacturing, and trafficking cocaine, the videos also demonstrate appellees and Groce engaging in more ordinary activities in the house distinct from those other individuals in the videos. For example, appellees and Groce are in the house without jackets, in contrast to others who come into view of the camera for a short duration. Although the videos do not include audio, appellees casually chat with each other, Groce, and others. At one point, Groce appears shirtless and rolls a cigar. While appellees and Groce are in view, another individual makes what appears to be french fries using a countertop appliance. At

another point, Walker makes himself a sandwich and appears to share a video on his phone with Dent and another individual. Dent makes a sandwich while handling a large roll of cash. At one point, Groce enters the kitchen with what appears to be a bag of food and a two-liter beverage. Walker and Dent share the beverage with Groce and others while Groce eats. While Walker works at the microwave doing what appears to be manufacturing crack cocaine, another individual attempts to hand him cash but Walker allows the individual to casually leave the money on the top of the microwave.

**{¶ 12}** The jury returned guilty verdicts for both appellees for engaging in a pattern of corrupt activity in addition to the other drug-related underlying offenses.[1] The trial court sentenced Walker to an aggregate prison term of 20 years and Dent to an aggregate prison term of 22 years.

**{¶ 13}** Dent and Walker separately appealed to the Tenth District and argued that their convictions were not supported by sufficient evidence. In each case, the court of appeals agreed and reversed each of their convictions for engaging in a pattern of corrupt activity on the basis that there was insufficient evidence to support those convictions.[2] *State v. Dent*, 10th Dist. Franklin No. 17AP-592, 2019-Ohio-1510; *State v. Walker*, 2019-Ohio-1458, 135 N.E.3d 444 (10th Dist.).

---

1. The jury also found Walker guilty of one count of possessing cocaine, one count of illegally manufacturing drugs, and three counts of trafficking in cocaine, but not guilty of the accompanying firearm specifications. Dent was also found guilty of one count of possessing cocaine, one count of illegally manufacturing drugs, and one count of trafficking in cocaine, along with the attendant firearm specifications. He also pleaded guilty to having a weapon while under a disability.

2. Walker and Groce raised nearly identical assignments of error in their respective appeals to the Tenth District. And the court of appeals' decision in each case is substantially similar. *Compare State v. Groce*, 2019-Ohio-1007, 133 N.E.3d 930 (10th Dist.), *with State v. Walker*, 2019-Ohio-1458, 135 N.E.3d 444 (10th Dist.) (conviction for engaging in a pattern of corrupt activity was not supported by sufficient evidence). In contrast, Dent argued in his appeal that the state failed to present sufficient evidence to survive a Crim.R. 29 motion for acquittal. The court of appeals' decision, however, relied on its reasoning in *Groce* to conclude that the state did not present sufficient evidence to support a conviction for engaging in a pattern of corrupt activity. *State v. Dent*, 10th Dist. Franklin No. 17AP-592, 2019-Ohio-1510, ¶ 12-13. This court's analysis in this

{¶ 14} The state sought this court's discretionary review in each case on the following proposition of law:

> The existence of an enterprise under R.C. 2923.31(C) is established by showing the organization is fully operational and engaging in a pattern of illicit activity. The time frame for the commission of a pattern of criminal conduct is sufficient where the evidence shows the corrupt activity is neither isolated or so closely connected to be considered a single offense. R.C. 2923.31(E).

We accepted the state's discretionary appeals, 156 Ohio St.3d 1463, 2019-Ohio-2892, 126 N.E.3d 1167, and consolidated the cases for oral argument, 157 Ohio St.3d 1438, 2019-Ohio-4202, 132 N.E.3d 697.

**Analysis**

{¶ 15} On its face, the state's proposition of law presents a sufficiency-of-the-evidence question. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443

---

opinion refers to the court of appeals' decision in *Walker* since that decision gives a more complete analysis of the relevant issues.

U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶ 16} At the core of the parties' arguments is a debate regarding how broadly to read the court of appeals' holding. The court of appeals correctly stated that R.C. 2923.32, which describes the offense of engaging in a pattern of corrupt activity, "does not contain a durational requirement," 2019-Ohio-1458, 135 N.E.3d 444, at ¶ 21. And it stated that its conclusion should not be read "to suggest that the predicate offenses underlying a charge of engaging in a pattern of corrupt activity can *never* occur on the same day." (Emphasis sic.) *Id*. at ¶ 27. But, the court of appeals ultimately concluded that the state's evidence was insufficient because "the state put forth no evidence that these men worked beyond the single day of the surveillance video." *Id*. In making this conclusion, the court of appeals elevated a time-duration requirement as an element of the offense. And by suggesting what *additional* evidence might have compelled it to reach a different conclusion, *see id.*, the court of appeals focused on whether the state presented the *best* evidence. But the proper question is whether the evidence presented, *when viewed in a light most favorable to the prosecution*, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Jenks* at paragraph two of the syllabus. Applying the proper standard, we conclude that it does.

{¶ 17} The statute setting forth the felony offense of engaging in a pattern of corrupt activity states that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." R.C. 2923.32(A)(1). R.C. 2923.32 is sometimes referred to as Ohio's "RICO statute," given its similarity to the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq.

{¶ 18} Like the federal law, Ohio's RICO statute requires the existence of an "enterprise" and a "pattern of corrupt activity." An "enterprise" is defined as including "any individual * * * or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). A "pattern of corrupt activity" is defined as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). At least one of the incidents in the pattern must be a felony. *Id.*

{¶ 19} The court of appeals started its sufficiency-of-the-evidence analysis with a focus on the word "longevity," 2019-Ohio-1458, 135 N.E.3d 444, at ¶ 20, because it is one of the structural features of an association-in-fact enterprise identified by the United States Supreme Court in *Boyle v. United States*, 556 U.S. 938, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009), *see* 2019-Ohio-1458, 135 N.E.3d 444, at ¶ 22. In *Boyle*, the court interpreted the definition of "enterprise" in the federal RICO statute, 18 U.S.C. 1961(4), which is materially similar to Ohio's statutory definition in R.C. 2923.31(C). *See Boyle* at 944-945. The court concluded that an association-in-fact enterprise need not have a formal structure, but must have at least the following features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946.

{¶ 20} Here, the court of appeals recognized that "the pertinent statutes and case law do not define 'longevity' in terms of finite, quantifiable amounts of time" but that "[s]ufficient longevity is required to determine whether there is a common purpose and whether the associates have relationships in furtherance of that purpose." 2019-Ohio-1458, 135 N.E.3d 444, at ¶ 24. Nonetheless, the court of appeals noted that other Ohio appellate districts have found "at least a month or predicate offenses occurring on different dates at different locations" to show the

longevity contemplated by *Boyle*. 2019-Ohio-1458, 135 N.E.3d 444, at ¶ 24. With that focus, the court of appeals concluded that there was insufficient evidence to prove an enterprise here because "all of the predicate offenses occurred on the same day in the same location" and "the state presented no evidence that the relationships of these men extended beyond a single day." *Id*. at ¶ 25.

{¶ 21} In *Boyle*, the longevity required for an association-in-fact enterprise was stated to be only that "sufficient to permit the[] associates to pursue the enterprise's purpose." *Id*. at 946. And the court of appeals is correct that nothing in the statutes or caselaw pertaining to the definition of "enterprise" in R.C. 2923.31(C) specifies a time duration. Thus, our task is to determine whether the evidence, when viewed in the light most favorable to the prosecution, is sufficient to allow a rational juror to conclude that the enterprise here had longevity sufficient to permit appellees to pursue the enterprise's purpose.

{¶ 22} Here, the purpose of the enterprise was to manufacture and sell cocaine out of the house on Greenway Avenue. The video evidence shows a relationship between appellees. Appellees, along with Groce, appear together in the videos, cooperating with each other in the manufacture, preparation, and sale of crack cocaine at a known drug house. The video evidence also demonstrates appellees and Groce casually and familiarly interacting with each other and their surroundings. For example, Dent and Groce work together to adjust the camera on which the video evidence was captured. All three eat and drink together and appear familiar with each other. They casually chat with each other and do not appear guarded or tense, even while exchanging money or preparing the cocaine for sale. Based on the video evidence, and viewing the evidence in the light most favorable to the prosecution as we must, a rational juror could reasonably conclude that appellees and Groce were not strangers to each other or to the drug activities at the house; and all understood the purpose of their joint activities. Thus, we conclude

that sufficient evidence demonstrates a purpose and relationship relating to their illegal activities.

{¶ 23} Evidence of longevity sufficient to further the purpose of the enterprise is demonstrated by Detective Gauthney's spot checks and his surveillance reports from March 11 and 15, the confidential informant's purchase of drugs, and the videos obtained at the time of the search on March 29. Together, this evidence demonstrates that activity consistent with an "up-and running drug house" had been occurring since at least late February when Gauthney received the complaints that prompted further investigation. Additionally, Gauthney observed Walker at the house on March 15 using the back door without knocking and staying longer than a few minutes, which is activity that stands in contrast to the more frequent visitors Gauthney observed knocking and entering the front door of the house and staying only five to ten minutes. Even if we focused solely on March 29, the day the video evidence was recorded, appellees performed the tasks necessary to further the enterprise's purpose of selling crack cocaine out of the house. And, based on appellees' conduct and interaction in the house on March 29 that is distinguishable from the frequent yet short-term visitors observed at the house, it is reasonable to infer that their activities with the enterprise extended beyond a single day.

{¶ 24} Viewing the evidence described above in a light most favorable to the prosecution as we must, we conclude that a rational juror could have found beyond a reasonable doubt that appellees participated in an association-in-fact enterprise with sufficient longevity to further its purpose.

{¶ 25} The court of appeals also noted that the statutory definition of a pattern of corrupt activity in R.C. 2923.31(E) requires that the incidents of corrupt activity not be isolated. It looked to this court's decision in *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, in which this court noted that the pattern of corrupt activity " 'must include both a relationship and continuous

activity, as well as proof of the existence of an enterprise,' " *id.* at ¶ 13, quoting *State v. Dudas*, 11th Dist. Lake No. 2008-L-109, 2009-Ohio-1001, ¶ 46. Focusing on the word "continuous," the court of appeals observed that it "seems to contemplate that the activity occurs over some not insignificant period of time." 2019-Ohio-1458, 135 N.E.3d 444, at ¶ 23. The court of appeals concluded that the surveillance-video evidence covering just one day of activity was not sufficient evidence to demonstrate that the predicate offenses were not isolated.

{¶ 26} As we noted above, a rational juror could reasonably infer from the activity and interactions observed in the surveillance-video evidence that the predicate offenses were not isolated, that appellees did not serendipitously find themselves in an up-and-running drug house and decide independently to cook crack cocaine and then weigh, bag, and sell it to customers who happened to enter the house. The productivity, the coordinated activity of each appellee and Groce— along with the ease and comfort with which they went about their business— evidenced a high degree of familiarity with the house, the work at hand, the clientele, and the volume and price of each bag. Importantly, appellees and Groce knew about the camera in the kitchen overlooking the drug-preparation and sales area and took pains to adjust it to capture the kitchen activity, presumably as a precaution against employee theft. It would be irrational and contrary to the evidence to determine that appellees' illegal activities that are observed were 'isolated' events. Viewing the evidence in a light most favorable to the prosecution as we must, we conclude that a reasonable juror could have found beyond a reasonable doubt that appellees participated in incidents of illegal activity that were not isolated and established a pattern of corrupt activity.

**Conclusion**

{¶ 27} For the foregoing reasons, we reverse the Tenth District's judgments in relevant part. In Dent's case (case No. 2019-0651), there are no remaining issues for the court of appeals to resolve; therefore, his conviction for engaging in a pattern

of corrupt activity is reinstated. In Walker's case (case No. 2019-0654), the Tenth District determined that its conclusion regarding insufficient evidence supporting the conviction mooted certain issues raised in some assignments of error. Therefore, we must remand Walker's case to the court of appeals for further proceedings to address those remaining issues.

Judgment reversed in case No. 2019-0651.

Judgment reversed in case No. 2019-0654

and cause remanded.

KENNEDY, FISCHER, and DEWINE, JJ., concur.

ZMUDA, J., concurs, with an opinion.

DONNELLY, J., dissents, with an opinion joined by STEWART, J.

GENE A. ZMUDA, J., of the Sixth District Court of Appeals, sitting for FRENCH, J.

_____

**ZMUDA, J., concurring.**

{¶ 28} I agree with the majority's conclusion that appellant the state of Ohio's evidence in these cases, involving appellees Alvin C. Dent Jr. and William L. Walker Jr., when viewed in a light most favorable to the prosecution, is sufficient to establish the existence of an association-in-fact enterprise under R.C. 2923.31(C) and a pattern of corrupt activity under R.C. 2923.32. I write separately because I reach this conclusion based on different reasoning than the majority, namely regarding how the state's evidence supports a reasonable juror's conclusion that the enterprise engaged in corrupt activity over a period of time extending beyond a single day.

{¶ 29} In *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, this court noted that R.C. 2923.31(C)'s definition of "enterprise" is "remarkably open-ended." *Id.* at ¶ 8. Indeed, an "enterprise" under R.C. 2923.31(C) includes "any individual, sole proprietorship, partnership, limited

12

partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or *group of persons associated in fact although not a legal entity*." (Emphasis added.)

{¶ 30} In *Beverly*, this court went on to adopt the definition of an association-in-fact enterprise articulated by the United States Supreme Court in *Boyle v. United States*, 556 U.S. 938, 944, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009). Indeed, the Supreme Court explained in *Boyle* that an association-in-fact enterprise is " 'a group of persons associated together for a common purpose of engaging in a course of conduct.' " *Id.*, quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The Supreme Court further explained that an association-in-fact enterprise must have "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. at 946. It is this longevity requirement that is at issue in these cases.[3]

{¶ 31} The issue in these cases is whether the evidence "is sufficient to allow a rational juror to conclude that the enterprise here had longevity sufficient to permit appellees to pursue the enterprise's purpose." Majority opinion at ¶ 21. The Tenth District Court of Appeals held that the evidence was not sufficient in either defendant's case, because the predicate offenses all occurred on the same day and the state failed to present evidence that the relationships among Walker and his codefendants extended beyond a single day. *See State v. Walker*, 2019-Ohio-1458, 135 N.E.3d 444, ¶ 27 (10th Dist.). Having examined the record, I conclude that the court of appeals' characterization of the state's evidence is inconsistent with the testimony provided by Detective Lawrence Gauthney of the Columbus police

---

3. That the group of men charged in these case—Dent, Walker, and a third individual, Drakkar Groce—were associated together for a common purpose of engaging in a course of conduct aimed at producing and selling crack cocaine out of the house located on Greenway Avenue is not in dispute here. The video surveillance depicting the group of men cooking crack cocaine and exchanging the product for large sums of cash with one another and with transients, when viewed in a light most favorable to the state, constitutes sufficient evidence to establish the coordinated activity of Walker, Dent, and Groce.

department at their joint trial as to the duration of Walker's and Dent's involvement in the enterprise.

{¶ 32} During its case-in-chief, the state presented extensive testimony from Detective Gauthney, who indicated that he performed spot checks on the Greenway Avenue home. Gauthney testified that during those checks, which took place two weeks prior to the controlled buy and subsequent search of the house, he observed what appeared to be an "up-and-running drug house." Notably, during his spot checks, Gauthney took notes, which included descriptions of the individuals who entered and exited the home as well as notations of the time of entry and exit. At trial, Gauthney testified that he observed Walker enter the house during one of his spot checks. Unlike the other entrants, Walker remained in the home for longer than a few minutes, and he entered the home without knocking. Furthermore, the video-surveillance camera was adjusted by Dent several times during the approximately four-hour recording. And the video footage reveals that Walker and Dent conducted drug activity inside the home.

{¶ 33} When viewing Gauthney's testimony and the reasonable inferences to be drawn therefrom in a light most favorable to the state, I find that a rational juror could conclude that the enterprise here was operational for a period of at least two weeks, from March 15, 2016, when Gauthney observed Walker entering and remaining at the home longer than some of the other visitors, and continuing through March 29, when the video surveillance confirmed Walker's and Dent's involvement in the enterprise. Gauthney's testimony established that Walker was a participant in the drug activity that occurred inside the residence on at least two dates spaced weeks apart, and the video surveillance confirmed Gauthney's observation that the residence was being used by the enterprise as an up-and-running drug house. Therefore, I conclude that the Tenth District erred in finding that all the predicate offenses occurred on the same day and that the state presented

no evidence to demonstrate that the relationships among Walker, Dent, and Groce extended beyond a single day.

{¶ 34} The state's evidence of coordinated drug activity by Walker, Dent, and Groce over a two-week period satisfies the applicable longevity requirement in these cases. This same evidence, in my view, also suggests a pattern of corrupt activity, contrary to the position espoused by the dissenting opinion. *See Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, at ¶ 7 (holding that the evidence used to prove an enterprise may also be used to prove the associated pattern of corrupt activity). Therefore, I agree with the majority's determination that the state's evidence was sufficient to support Walker's and Dent's convictions for engaging in a pattern of corrupt activity in violation of R.C. 2923.32. Given the two-week period of coordinated activity that is suggested by the evidence introduced by the state, we need not, and the majority does not, delve into whether it is possible to obtain a conviction for engaging in a pattern of corrupt activity based on conduct that occurs entirely within a one-day period. That issue simply is not presented here.

{¶ 35} With this explanation in mind, I concur.

---

**DONNELLY, J., dissenting.**

{¶ 36} To prove that a defendant has committed the offense of engaging in a pattern of corrupt activity in violation of R.C. 2923.32, the state must have sufficient evidence that the defendant engaged in two or more separate incidents of corrupt activity. Appellant, the state of Ohio, presented evidence that appellees, Alvin C. Dent Jr. and William L. Walker Jr., were involved in a single incident of corrupt activity that was undivided in both time and place. Because I would conclude that the state did not present sufficient evidence to support appellees' convictions for engaging in a pattern of corrupt activity, I dissent.

15

{¶ 37} The facts in this case are simple. After the Columbus Police Department conducted surveillance of a house on Greenway Avenue, police subsequently executed a warrant for the house and obtained video footage showing Walker, Dent, and other individuals preparing and selling crack cocaine. The video footage lasted a little over four hours and covered a single date—March 29, 2016. Walker and Dent (1) were not in the Greenway Avenue house when the police executed the search warrant, (2) were not identified as being present in the Greenway Avenue house when the police conducted a controlled drug buy, which occurred the day before the police executed the search warrant, and (3) were not heard discussing past instances of drug sales or future plans for drug sales in the video, as it did not include audio. In short, there was no evidence of Walker or Dent engaging in any criminal activity together other than the criminal activity seen on the video itself. But because Walker and Dent did not seem to "serendipitously find themselves," majority opinion at ¶ 26, committing crimes for the very first time in a random location with complete strangers, and instead seemed to know each other and how to prepare crack cocaine, the majority concludes that there is sufficient evidence that Walker and Dent engaged in a pattern of corrupt activity.

{¶ 38} I would conclude that the evidence proves nothing more than Walker and Dent engaging in a single, isolated instance of corrupt activity involving multiple drug offenses. The fact that Walker and Dent seemed to know each other and ate sandwiches together does not transform their actions that occurred over a four-hour period into an ongoing participation in the kind of organized-crime syndicate targeted by R.C. 2923.32. There are statutes that punish the actions shown in the video recording—possessing cocaine (R.C. 2925.11), illegally manufacturing drugs (R.C. 2925.04), and trafficking cocaine (R.C. 2925.03)—and Walker and Dent were convicted pursuant to those statutes and received prison terms for those drug offenses. To add an additional, consecutive 11-year prison

16

term to each of their sentences for engaging in a pattern of corrupt activity is just absurd.

{¶ 39} Ohio's statutory prohibition against engaging in a pattern of corrupt activity, R.C. 2923.32, is modeled after the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961 et seq. *State v. Schlosser*, 79 Ohio St.3d 329, 332, 681 N.E.2d 911 (1997). The federal RICO statute is intended to target the kind of organized-crime syndicates that have the power to " 'infiltrate and corrupt legitimate business and labor unions and * * * democratic processes,' " resulting in harm to the nation's economy and domestic security. *Id*., quoting Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922, reprinted in 1970 U.S.C. Cong. & Adm. News at 1073. Organized-crime syndicates obtained such power in large part " 'through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs, and other forms of social exploitation.' " *Id*., quoting Organized Crime Control Act of 1970. Accordingly, the federal RICO statute provides the federal government with the tools to link together various incidents of illegal activity, including drug trafficking, in order to eradicate organized-crime syndicates. While drug trafficking may be relevant to proving that someone engaged in a pattern of corrupt activity, it is a mere piece to the larger puzzle.

{¶ 40} Nothing about the purpose behind the federal RICO statute strikes me as intending to inflict significant additional punishment on participants in a single series of drug sales just because the participants seem to know each other. But federal congressional intent aside, an application of the plain language of Ohio's statutes—R.C. 2923.31 and 2923.32—demonstrates that the state did not put forth sufficient evidence that Walker and Dent engaged in a pattern of corrupt activity.

{¶ 41} R.C. 2923.32(A)(1) prohibits a person from participating in "the affairs of [an] enterprise through a pattern of corrupt activity." Although the majority focuses mostly on the meaning of the word "enterprise," the crux of this case is whether Walker and Dent engaged in a "pattern of corrupt activity," which is defined as "two or more incidents of corrupt activity * * * that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E).

{¶ 42} The specific type of "corrupt activity" applicable here is defined as "[a]ny violation" or "any combination of violations" of certain criminal statutes, including R.C. 2925.11 (possessing drugs when the offense is a felony of the first, second, third, or fourth degree), R.C. 2925.04 (illegally manufacturing drugs), and R.C. 2925.03 (trafficking drugs), "when the proceeds of the violation [or combination of violations], * * * or the value of the contraband * * * exceeds one thousand dollars." R.C. 2923.31(I)(2)(c). The $1,000 minimum "applies to each individual, and not to the enterprise as a whole." *State v. Stevens*, 139 Ohio St.3d 247, 2014-Ohio-1932, 11 N.E.3d 252, ¶ 18 (lead opinion).[4]

{¶ 43} To constitute a "pattern" as it is defined in R.C. 2923.31(E), the state must prove (1) two or more separate incidents of corrupt activity, (2) that each incident has a connection with the enterprise, and (3) that the incidents are not isolated. All three of the foregoing requirements apply conjunctively, meaning that proof of two incidents alone is not enough to establish that a person engaged in a

---

4. The Tenth District Court of Appeals did not reach the issue in Walker's case whether his drug offenses involved proceeds or contraband over $1,000 because it concluded that there was insufficient evidence to support Walker's conviction for engaging in a pattern of corrupt activity on other grounds. (Dent did not raise the monetary-threshold issue in his appeal to the Tenth District.) Because it is generally inappropriate to address legal issues "before the lower courts have the opportunity to address them in the first instance," *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, 997 N.E.2d 490, ¶ 22, I am assuming for the sake of the rest of the analysis that the $1,000 threshold was met.

pattern of corrupt activity in violation of R.C. 2923.32: the incidents must be evaluated to determine whether their details and context truly establish a pattern. Further, and most importantly to this case, R.C. 2923.31(E) states that if the incidents of corrupt activity are "so closely related to each other and connected in time and place," then "they constitute a single event," not two or more.

{¶ 44} The federal RICO statute similarly requires a " 'pattern of racketeering activity,' " which requires "at least two acts of racketeering activity." 18 U.S.C. 1961(5). Although 18 U.S.C. 1961(5) does not include the specific kind of temporal and locational limitations found in R.C. 2923.31(E), federal courts have concluded that the requirement of "two acts" requires two separate criminal incidents and that multiple crimes committed within one episode do not constitute separate "acts" for purposes of 18 U.S.C. 1961(5). *Apparel Art Internatl., Inc. v. Jacobson*, 967 F.2d 720, 722-723 (1st Cir.1992), citing *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 31 (1st Cir.1987); *J.D. Marshall Internatl., Inc. v. Redstart, Inc.*, 935 F.2d 815, 820-821 (7th Cir.1991); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1417-1419 (3d Cir.1991), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007. The First Circuit reasoned that holding otherwise "would mean that many individual bank robberies, frauds, drug sales, embezzlements, and other crimes as well would automatically fall within the scope of the RICO statute, a result contrary to RICO's basic purpose." *Apparel Art Internatl., Inc.* at 722.

{¶ 45} Thus, neither the federal nor Ohio's statutes intended for isolated clusters of multiple criminal acts to constitute RICO violations. Even the arguably narrower standard under the federal statute inherently requires some manner of temporal or conceptual division between racketeering acts in order to establish the minimum "two acts of racketeering activity," 18 U.S.C. 1961(5). The standards and requirements in Ohio are explicit: R.C. 2923.31(I)(2)(c) states that an incident

of corrupt activity may involve "any combination of violations" of specific criminal statutes, and R.C. 2923.31(E) states that multiple incidents of corrupt activity constitute a single event if they are closely related to each other and connected in time and place. Accordingly, multiple related crimes committed during the same time period and in the same place qualify as only one incident of corrupt activity under Ohio law.

{¶ 46} Walker and Dent committed multiple related crimes during the same time period and in the same place. The plain language of R.C. 2923.31(E) and 2923.31(I)(2)(c) requires the conclusion that Walker and Dent engaged in only one incident of corrupt activity.

{¶ 47} The majority opinion focuses on the details and context surrounding the drug offenses that Walker and Dent committed on March 29, 2016, such as the month-long suspicion that the house on Greenway Avenue was a source of drug activity, Walker's and Dent's mutual efforts to cook, divide, package, and sell crack cocaine, and their ordinary activities together, like eating snacks and showing each other cell-phone videos. As discussed by the majority, these details assist with proving that an "enterprise" exists as defined by R.C. 2923.31(C). But these details do not transform a single, isolated incident of corrupt activity that occurred on March 29, 2016, into two or more separate incidents of corrupt activity. Without the foundational requirement of two or more incidents, the remainder of the analysis fails no matter how compelling it is.

{¶ 48} Instead of acknowledging that a modicum of additional police work could have potentially uncovered evidence to establish that Walker and Dent were involved in additional, separate incidents of corrupt activity sufficient to establish a violation of R.C. 2923.32, the state has asked this court to stretch the limits of R.C. 2923.31 and 2923.32 to their absolute breaking point. And the majority has obliged, rewarding incomplete police work and providing the state with yet another

opportunity to gain an unjust amount of leverage to extract guilty pleas from small-time criminals by adding big-time criminal charges to their already stacked indictments. It is an unjust result, unsupported by the plain language and spirit of R.C. 2923.31 and 2923.32. I dissent, and would affirm the judgments of the Tenth District Court of Appeals.

STEWART, J., concurs in the foregoing opinion.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Kimberly M. Bond, Assistant Prosecuting Attorney, for appellant.

Brian J. Rigg, for appellee Alvin D. Dent Jr. in case No. 2019-0651.

Blake Law Firm Co., L.L.C., and Dustin M. Blake, for appellee William L. Walker Jr. in case No. 2019-0654.

_____