[Cite as *State v. Arnold*, 2023-Ohio-1223.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220284 |
| | | TRIAL NO. 22CRB-337 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| HASSAN ARNOLD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: April 14, 2023

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Rebecca Barnett,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

**{¶1}** Hassan Arnold appeals his conviction, after a bench trial, for making false alarms. In one assignment of error, Arnold argues that his conviction is not supported by sufficient evidence and is contrary to the manifest weight of the evidence. We find that the conviction was not supported by legally sufficient evidence, and we reverse the judgment of the trial court and discharge Arnold.

## Factual Background

**{¶2}** Hassan Arnold was charged with two counts of making false alarms related to two 911 calls made on December 25, 2021, and January 6, 2022. The trial court found him not guilty of the charge that occurred on Christmas, but guilty of the second charge. Both complaints alleged that Arnold reported to a law enforcement agency an alleged offense, knowing the offense did not occur.

**{¶3}** The case proceeded to a bench trial. During opening remarks, the prosecutor theorized that Arnold made the false report to distract police attention from a report by Meredith Gibson, the mother of Hassan's child, accusing him of a criminal offense. The state's first witness was Honesty Kidd, a 911 dispatcher for the city. Kidd testified that she received a call on January 6, 2022, at 12:34 a.m. from a man named Terrence from a phone number with a (513) area code. The male caller reported that there was "possibly a shooting" on West 8th Street, and stated a male was lying in the street. The location of the caller was on Akochia Avenue between the addresses of 4000 to 4036.

**{¶4}** Nicholas Leonard, a 911 dispatcher, testified that he dispatched officers to the location of the alleged shooting. The responding officers were unable to locate a shooting victim. Leonard ran a history on the phone number and found a call for service on December 25 regarding a "false shooting."

{¶5} Leonard also testified about a second call received a few minutes before midnight, and approximately 40 minutes before the call reporting a possible shooting. The caller reported that her child's father, Hassan Arnold, who was the subject of a temporary restraining order, had put an unknown substance in her gas tank. That call was cleared at 12:40 a.m.

{¶6} Officer Jennifer Myers testified that she responded to a call that night from Meredith Gibson. After determining that no offense had occurred, Myers reported to another incident on Akochia Avenue, a few streets away. That address was associated with a report of a shooting on West 8th Street. Myers was able to determine the exact address where the call originated by "running the long-lat and [getting] a ping." Myers knocked on the door of the house, and a man answered the door. He said he did not make the call, and he did not hear any gunshots.

{¶7} Officer Miguel Dilbert, who also responded to the scene of the alleged shooting on West 8th Street, was unable to locate a shooting victim.

{¶8} The next witness was Officer Alex Gettys, an investigator for the City of Cincinnati Police. Gettys testified that he was assigned to investigate a false call related to the 911 call reporting that a shooting had occurred. Gettys had run the caller's phone number through the police records management system and RCIC and found that the number had been associated with Arnold. When asked what date the police records reported the number was associated with Arnold, he responded, "I do not recall the exact last time that the report was made that had this number in it, but it was sometime within the year prior of 2021." Gettys believed Arnold made the call based on the police records and Gibson's statements that she was having problems with Arnold.

{¶9}   Gettys issued a subpoena to T-Mobile requesting the phone records for the number associated with the 911 calls.  T-mobile reported that the phone number was registered to "Mike Lawery" with a Kansas address.  Gettys testified that he believed that "Mike Lawery" was an alias used by Arnold because a person named "Mike Lawery" appears in the Bad Boys movies.  Gettys did not try to contact Lawery or determine if the person existed.

{¶10}   The trial court found that, "[t]he only thing the state didn't prove was whether or not Mr. Arnold was the person on the [911] tape making the report.  * * * But the way that the statute reads, itself, the Court finds Mr. Arnold caused the false alarm to be made.  And there's a finding of guilty. "

### Sufficiency of the Evidence

{¶11}   Arnold appeals challenging the sufficiency and manifest weight of the evidence.  Arnold contends that the conviction was based on insufficient evidence because, as the trial court found, the state failed to prove that Arnold was the person who actually made the 911 call.

{¶12}   Whether the evidence is legally sufficient to support a conviction is a question of law that we review de novo. *See State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, 170 N.E.3d 813, ¶ 7.  The question is whether the evidence presented at trial, "when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15.

{¶13}   R.C. 2917.32(A)(3) provides that no person shall "[r]eport to any law enforcement agency an alleged offense or other incident within its concern, knowing that such offense did not occur."  Thus, the state was required to prove that Arnold made the false report. *See East Cleveland v. Pratt*, 10 Ohio St.2d 75, 76, 225 N.E.2d

4

607 (1967) (explaining that a person is guilty of giving a false report to the police department when the person telephones the police and tells them that a man has broken into her apartment, when in fact the report is false); *State v. Barnwell*, 12th Dist. Clermont No. 998, 1981 Ohio App. LEXIS 14240, 4 (Apr. 1, 1981) (affirming a conviction for violating R.C. 2917.32(A)(3) where "[i]t is uncontroverted that the appellant contacted the Batavia Police officials and reported to them a robbery which had not occurred and which he knew had not occurred."); *State v. Freily*, 3d Dist. Marion No. 9-97-19, 1997 Ohio App. LEXIs 5475, 5 (December 5, 1997) ("The essential element to be proven [under R.C. 2917.32(A)(3)] is knowledge of the reporter that the offense reported had not occurred.").

{¶14} When issuing its decision, the trial court specifically found that, "The only thing the state didn't prove was whether or not Mr. Arnold was the person on the tape making the report." Yet, to support the conviction, the state was required to prove that Arnold made the false report. *See id.* Because the trial court found that the state failed to prove that Arnold reported the false offense, the evidence was insufficient to "allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *See Dent* at ¶ 15.

{¶15} The court's guilty finding was premised on its conclusion that "Mr. Arnold caused the false alarm to be made." Under R.C. 2917.32(A)(2), the section of the false alarm statute that prohibits a person from "[k]nowingly caus[ing] a false alarm of fire or other emergency to be transmitted," a person violates the statute by causing a false alarm to be made as opposed to reporting a false offense. *See State v. Johnigan*, 2d Dist. Montgomery No. 19734, 2004-Ohio-260, ¶ 15. ("Thus, under [R.C. 2917.32(A)(2)], the state must have been able to prove beyond a reasonable doubt that

[the defendant] herself was involved in making the 911 call."). Here, Arnold was charged with violating R.C. 2917.32(A)(3), not R.C. 2917.32(A)(2).

{¶16} The state admits the complaint tracked the language of R.C. 2917.32(A)(3), yet argues that the complaint can be construed to charge Arnold with a violation of both, R.C. 2917.32(A)(2) and (A)(3), since the complaint did not specify which subsection Arnold violated. The state further contends that Arnold failed to object to the omission of the statutory subsection and has waived that issue.

{¶17} Arnold is not alleging any defect in the complaint. The record is clear that both parties understood that the complaint, which tracked the language of R.C. 2917.32(A)(3), was based on a violation of R.C. 2917.32(A)(3). In its opening statement, the state explained that the basis of both charges was that "Mr. Arnold called the police making false claims that a person had been shot in a location where officers responded." During closing, both parties argued whether the evidence established that Arnold made the calls.

{¶18} Finally, the state avers that had Arnold objected "following the trial court's finding that the complaint was deficient," the state could have moved to amend the complaint pursuant to Crim.R. 7(D). Under Crim.R. 7(D), "The court may at any time before, during, or after trial amend the * * * complaint * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

{¶19} We first note that the trial court did not find that the complaint was deficient. Although the trial court could have found that the complaint was deficient and, under Crim.R. 7(D), amended the complaint to charge a violation of R.C. 2917.32(A)(2), the record reflects that the court did not do so. Rather, the trial court

found that the state failed to prove that Arnold made the report, an essential element that the state was required to prove to support the conviction.

**{¶20}** Accordingly, we find that the conviction for making false alarms was not supported by sufficient evidence and sustain the assignment of error.

## Conclusion

**{¶21}** Having sustained Arnold's assignment of error, we reverse the judgment of the trial court and discharge Arnold from further prosecution.

Judgment reversed and appellant discharged.

**BERGERON** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.