[Cite as *State v. Corteggiano*, 2024-Ohio-1653.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, CITY OF ASHTABULA, | CASE NO. 2023-A-0065 |
| Plaintiff-Appellee, | Criminal Appeal from the Municipal Court |
| - vs - | |
| DOMINIC M. CORTEGGIANO, | Trial Court No. 2022 CRB 00737 |
| Defendant-Appellant. | |

## **O P I N I O N**

Decided: April 29, 2024
Judgment: Affirmed

*Cecilia M. Cooper*, Ashtabula City Solicitor, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Margaret Brunarski*, Ashtabula County Public Defender, and *Michael J. Ledenko*, Assistant Public Defender, 22 East Jefferson Street, Jefferson, OH 44047 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1}   Appellant, Dominic M. Corteggiano, appeals his conviction for aggravated menacing.  We affirm.

{¶2}   In 2022, Corteggiano was charged with aggravated menacing, a first-degree misdemeanor, in violation of R.C. 2903.21, following an incident at a Walmart self-checkout station.  Corteggiano pleaded not guilty, and the case proceeded to bench trial.

{¶3}   Following trial, the court found Corteggiano guilty and set the matter for sentencing.  Thereafter, the court sentenced Corteggiano to a 90-day term of

confinement, fully suspended, together with a fine, partially suspended. The court prohibited Corteggiano from visiting a Walmart for two years without written permission and ordered him to perform 24 hours of community service, to complete certain conflict resolution or anger management classes, to write a letter of apology to the victim, and to commit no similar offenses for three years.

{¶4} Corteggiano noticed an appeal from the sentencing entry. In a judgment entry issued by this court on March 21, 2024, we explained that the sentencing entry failed to meet the requirements of a final appealable order. *See State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus; Crim.R. 32(C), and *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E. 2d 163, ¶ 17. Accordingly, we issued a limited remand to the trial court to issue a new sentencing entry that complied with the applicable finality criteria. The trial court issued a nunc pro tunc sentencing entry on March 25, 2024. We now proceed to review Corteggiano's sole assigned error, which follows:

{¶5} "The trial court erred in denying Corteggiano's motion for acquittal under Criminal Rule 29 because the evidence viewed in light most favorable to the government fails to prove the offense charged."

{¶6} A motion for acquittal under Crim.R. 29 challenges the sufficiency of the state's evidence to sustain a conviction of the charged offense. The question of whether sufficient evidence supports a conviction "is a test of adequacy," which we review de novo. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact

2

to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15; *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶7} Here, Corteggiano was charged with aggravated menacing, in violation of R.C. 2903.21(A), which provides: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person * * *." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22.

{¶8} In support of the charge, at trial, the state presented the testimony of a Walmart cashier and her supervisor. This testimony indicated that, on the date at issue, Corteggiano used a self-checkout at Walmart to ring up a bathmat, and he informed the cashier that the price displayed on the self-checkout was incorrect because the bathmat was on sale. The cashier checked the price on her device, but it did not display a sale price. Corteggiano reiterated that the bathmat was on sale, and the cashier responded that she would take the item and have the price checked. Corteggiano "got upset by it," when the cashier took the item to her supervisor, and he left the self-checkout area. Corteggiano returned with a picture on his phone of the sale price displayed in the store and showed the picture to the cashier. Corteggiano then headed out of the store, facing away from the cashier, and when he was several feet away, near her supervisor, the cashier heard him make a statement, but she could not decipher what he had said. The cashier testified that she has difficulty with her hearing, particularly when there is substantial activity around her, such as in the self-checkout area.

3

{¶9} The supervisor testified that, when Corteggiano was walking past her, a few feet from where she stood, she heard him state "ever take anything out of my hands like that again, I'll come back and chop your fucking hands off." The supervisor indicated that Corteggiano did not make the statement to her, nor did he appear to be speaking to anyone in particular. However, she clearly heard Corteggiano make this statement in an angry and agitated way, loud enough to cause other customers in the self-checkout area to turn toward him. The supervisor informed the cashier of the statement made by Corteggiano. The cashier testified that, ever since the incident, she is startled by people approaching her from behind and is always watching her surroundings and fearful that something may happen.

{¶10} After eliciting the above testimony, the state rested, and Corteggiano moved for acquittal pursuant to Crim.R. 29. The trial court overruled the motion. Thereafter, Corteggiano testified on his own behalf. His testimony of the events at the store was fairly consistent with the testimony of the state's witnesses, except as to the alleged threat. Corteggiano testified that, although he could not remember specifically what he said as he was leaving the store, he recalled that he was muttering to himself, and he was not addressing anyone in particular.

{¶11} On appeal, Corteggiano argues that the trial court erred in overruling his Crim.R. 29 motion because the state failed to produce sufficient evidence that he "knowingly" caused the cashier to believe he would cause her serious physical harm. In support, Corteggiano maintains that the evidence established that he did not make the statement to any particular person. *See State v. Chmiel*, 11th Dist. Lake No. 96-L-173, 1997 WL 663316, *1-2 (Sept. 26, 1997) (insufficient evidence to support aggravated

4

menacing conviction where defendant relayed disturbing thoughts she was having regarding a neighborhood child to mental health professional and police officer).

{¶12} In *State v. Nixon*, 2014-Ohio-4303, 20 N.E.3d 404, ¶ 4 (11th Dist.), addressed by both parties in their briefs, this court affirmed an aggravated menacing conviction of a jail inmate who made threatening statements to a third party regarding a corrections officer. On appeal, the inmate maintained that his conviction lacked "evidentiary support because he did not make threats directly to [the corrections officer] or a member of the officer's family." *Id.* at ¶ 16. However, this court concluded that, given the evidence that the inmate made the threats during calls that he knew were recorded and monitored and made one threat on a phone that was in close proximity to the correction officer's desk, the threats "were made under circumstances that placed appellant on reasonable notice that his threats would probably reach [the correction officer] or his family and cause these individuals to believe appellant would cause them serious physical harm." *Id.* at ¶ 18 (distinguishing *Chmiel* and *State v. Richard*, 129 Ohio App.3d 556, 718 N.E.2d 508 (7th Dist.1998)).

{¶13} Here, Corteggiano maintains that the evidence established that he did not make the statement to any particular person or with the type of notice present in *Nixon* that his statement would be relayed to the target of the statement. However, when viewing the evidence in the light most favorable to the state, Corteggiano's statement was made loud enough to be heard by the supervisor and the other customers in Corteggiano's vicinity. Moreover, although the cashier could not decipher what was said, she could hear Corteggiano make a statement from several feet away with his back turned

5

to her.  Under these circumstances, Corteggiano was on reasonable notice that his statement would probably reach the cashier.

{¶14}  Accordingly, Corteggiano's sole assigned error is without merit.

{¶15}  The judgment is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

Case No. 2023-A-0065