[Cite as *State v. Groce*, 2021-Ohio-3490.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                    :               No. 18AP-51
                                                                            (C.P.C. No. 16CR-3448)
v.                                                        :
                                                                      (REGULAR CALENDAR)
Drakkar D. Groce,                                 :

      Defendant-Appellant.                  :

D E C I S I O N

Rendered on September 30, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Dennis C. Belli*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} This case is before the court on remand from the Supreme Court of Ohio pursuant to *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671 ("*Groce II*"). The Supreme Court reversed in part our judgment in *State v. Groce*, 10th Dist. No. 18AP-51, 2019-Ohio-1007 ("*Groce I*"), as it related to the sufficiency of the evidence on the conviction of engaging in a pattern of corrupt activity and remanded the case to this court for further proceedings to address the issues this court deemed mooted in *Groce I*. On consideration of the remaining issues, we affirm.

## I. Facts and Procedural History

{¶ 2} In *Groce I*, defendant-appellant, Drakkar D. Groce, appealed from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of engaging in a pattern of corrupt activity, one count of

possession of cocaine, one count of illegal manufacture of drugs, and five counts of trafficking in cocaine, along with firearm specifications accompanying each conviction. We concluded in *Groce I* that there was insufficient evidence to support Groce's conviction for engaging in a pattern of corrupt activity and the attendant firearm specification, rendering moot several additional arguments Groce made related to his conviction of engaging in a pattern of corrupt activity. *Groce I* at ¶ 90. We additionally found, however, that there was sufficient evidence to support Groce's convictions of trafficking in cocaine, possession of cocaine, and illegal manufacture of drugs, as well as the attendant firearm specifications, and we overruled Groce's assignments of error challenging evidentiary rulings, closing arguments, ineffective assistance of counsel, a *Batson* challenge, and determinations of merger. *Id.*

{¶ 3} The Supreme Court of Ohio accepted the state's discretionary appeal on the following proposition of law: "To sustain a conviction for a violation of R.C. 2923.32, the corrupt activity statute, the State must prove that the defendant engaged in continuous criminal activity for a time period sufficient in length to permit him and his associates to pursue the enterprise's criminal purpose." *Groce II* at ¶ 5. In a related case involving Groce's trial codefendants, the Supreme Court set out the relevant facts and procedural history of this case as follows:

> After a joint jury trial, [Alvin C.] Dent [Jr.] and [William L.] Walker [Jr.] were both found guilty of engaging in a pattern of corrupt activity, possessing cocaine, illegally manufacturing drugs, and trafficking in cocaine. The convictions for engaging in a pattern of corrupt activity are the focus of this consolidated appeal. A third individual, Drakkar Groce, was also convicted in the same trial. Groce's conviction is the subject of a separate but related appeal pending before this court in case No. 2019-0594.
>
> At the joint trial, Detective Lawrence Gauthney of the Columbus Police Department testified that he began observing a house on Greenway Avenue in response to citizen complaints that he had received around February 2016. As a result, he conducted two to three "spot checks" during which he observed foot traffic at the house consistent with "an up-and-running drug house." More specifically, he observed a high volume of individuals who knocked and entered the house like visitors, but stayed only five to ten minutes before

leaving. He testified that in his experience, this was activity consistent with the sale of drugs from the house.

Gauthney testified that on March 11 and 15, he conducted visual surveillance of the property for over an hour each time. Gauthney's surveillance reports were admitted into evidence, and he testified again that the activity at the house—specifically, a high volume of foot traffic in and out within a short period of time—was what he had consistently observed during each spot check. Additionally, during the March 15 surveillance, Gauthney observed Walker enter through the back door of the house but did not see him leave during the approximately one and one-half hours that Gauthney had observed the house.

On March 28, Gauthney arranged for a confidential informant to purchase what Gauthney believed to be crack cocaine from someone in the house. Following this buy, Gauthney obtained a no-knock warrant to search the house.

When the warrant was executed on March 29, neither appellees nor Groce were apprehended in the house, but three other individuals were. The police recovered items from the house, including small plastic bags containing cocaine, electronic scales containing cocaine residue, a glass measuring cup containing cocaine residue, as well as multiple firearms and ammunition located throughout the house. During the search of the house, the police also recovered video recordings from a camera that was located in the house's kitchen containing footage of appellees, Groce, and other individuals. Gauthney determined that the recorded footage covered a single date—March 29—and lasted for a period of over four hours.

From the videos, Gauthney drafted an investigative report in which he described what he observed at various portions of the videos. This report and portions of the actual videos were admitted into evidence. In addition, Gauthney testified as to what he believed the videos showed while the videos played for the jury. In summary, Gauthney testified that the camera recorded appellees and Groce conducting various activities with what Gauthney believed to be cocaine, including "cooking" it to make crack cocaine (by heating a mixture of cocaine, baking soda, and water), weighing and bagging the drug, selling it, and exchanging large amounts of money.

More specifically, the videos show Dent handling and weighing multiple small plastic bags of a white substance believed to be crack cocaine. Dent is present while Groce "cooks" crack cocaine using a microwave. Dent also exchanges large stacks or rolls of money with others in the house, including Groce and Walker. At one point, Dent—with Groce's help—adjusts the camera in the kitchen for several minutes.

The videos show Walker handling small plastic bags of crack cocaine and exchanging large amounts of money with Dent. He also prepares crack cocaine using a measuring cup, baking soda, and the microwave. He exchanges a small bag containing what appears to be crack cocaine for money with unknown individuals. And then he goes back to bagging up crack cocaine at the kitchen table.

The videos also show Groce selling what appears to be crack cocaine to several individuals who appear to stay only a short time after he lets them into the house. He accesses kitchen cabinets in which portions of crack cocaine appear to be stored, weighs the substance and places it in smaller plastic bags. In addition to "cooking" crack cocaine, he handles large "cookie" size portions of crack cocaine and splits those larger portions into smaller-sized portions and places the smaller portions in bags. He handles money in the kitchen from others and places it in his wallet.

In addition to these activities that relate to the underlying offenses of possessing, illegally manufacturing, and trafficking cocaine, the videos also demonstrate appellees and Groce engaging in more ordinary activities in the house distinct from those other individuals in the videos. For example, appellees and Groce are in the house without jackets, in contrast to others who come into view of the camera for a short duration. Although the videos do not include audio, appellees casually chat with each other, Groce, and others. At one point, Groce appears shirtless and rolls a cigar. While appellees and Groce are in view, another individual makes what appears to be french fries using a countertop appliance. At another point, Walker makes himself a sandwich and appears to share a video on his phone with Dent and another individual. Dent makes a sandwich while handling a large roll of cash. At one point, Groce enters the kitchen with what appears to be a bag of food and a two-liter beverage. Walker and Dent share the beverage with Groce and others while Groce eats. While Walker works at the microwave doing what

> appears to be manufacturing crack cocaine, another individual attempts to hand him cash but Walker allows the individual to casually leave the money on the top of the microwave.

*State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, ¶ 2-11. *See also Groce II* at ¶ 2 (noting "the evidence presented at [the joint trial] is described in" *Dent*). Further, the Supreme Court stated in *Groce II*:

> The jury found Groce, Dent, and Walker each guilty of engaging in a pattern of corrupt activity, possessing cocaine, illegally manufacturing drugs, and trafficking in cocaine. Groce's conviction for engaging in a pattern of corrupt activity is the focus of this appeal. Dent's and Walker's convictions for the same offense are the subject of separate appeals, which were considered together in *Dent*.
>
> Groce appealed to the Tenth District Court of Appeals and argued that his conviction for engaging in a pattern of corrupt activity was not supported by sufficient evidence. The court of appeals agreed and reversed that conviction.

*Groce II* at ¶ 3-4.

{¶ 4} In *Groce I*, we held that "the evidence here was insufficient to satisfy both the longevity prong of the *Boyle* [*v. United States*, 556 U.S. 938 (2009)] test and the statutory definition of pattern of corrupt activity." *Groce I* at ¶ 25. However, in reversing the decision of this court in *Groce I*, the Supreme Court concluded in *Groce II* that:

> As we concluded in *Dent*, viewing the evidence in the light most favorable to the prosecution as we must, a rational juror could reasonably conclude that Groce, Dent, and Walker were not strangers to each other or to the drug activities that had been occurring at the house. All three understood the purpose of their joint activities to manufacture and sell cocaine out of the house on Greenway Avenue. Thus, we conclude that sufficient evidence demonstrates a purpose and relationship relating to their illegal activities. We also conclude that a rational juror could have found beyond a reasonable doubt that Groce participated in an association-in-fact enterprise with sufficient longevity to further its purpose.
>
> With respect to the existence of a pattern of corrupt activity, we conclude that a rational juror could reasonably infer from the activity and interactions observed in the video-

> surveillance evidence that Groce's activity in the house with Dent and Walker was not isolated to a single day or a single drug transaction. Taking the evidence together, and viewing it in a light most favorable to the prosecution as we must, we conclude that a reasonable juror could have found beyond a reasonable doubt that Groce was not a stranger to Dent and Walker or to the operations occurring at the house, and that he participated in incidents of illegal activity that were not isolated and established a pattern of corrupt activity.

*Groce II* at ¶ 8-9. Accordingly, the Supreme Court reversed the decision of this court and remanded the case to us. *Id.* at ¶ 10. This court subsequently issued a journal entry stating, pursuant to the mandate of the Supreme Court reversing the judgment of this court, this matter is hereby resubmitted to the court for consideration of the arguments deemed moot in *Groce I*.

## II. Assignments of Error

{¶ 5} The assignments of error remanded to this court for consideration read as follows:

> [4.] Defendant-appellant was denied his right to due process and a fundamentally fair jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution due to improper closing remarks by the prosecutor: A) falsely representing to the jury that the home security video recording equipment was motion-activated, B) expanding the scope of the corrupt activity count beyond the predicate acts listed in the indictment, and C) urging the jury to consider the erroneously admitted anti-"snitch" tattoo photographs for a forbidden purpose.

> [5.] Defendant-appellant was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution due to his attorney's: A) failure to object to the admission of the written report of the lead detective's interpretation of the contents of the video clips, B) failure to request a jury instruction regarding the continuity requirement for proving a pattern of corrupt activity, and C) failure to object to the trial judge's inadequate response to a jury question.

> [7.] The trial court's failure to merge defendant-appellant's trafficking convictions and firearm specifications for sentencing violated R.C. 2941.25 and/or R.C. 2929.14 and his

> rights under the double jeopardy clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

Pursuant to the Supreme Court's remand, we address only the portions of these assignments of error deemed moot in *Groce I.*

## III.  Fourth Assignment of Error – Prosecutor's Closing Remarks

{¶ 6}   In his fourth assignment of error, Groce argues the prosecutor made several remarks during the state's closing argument that deprived Groce of his right to a fair trial. More specifically, Groce challenges as improper and prejudicial the prosecutor's statements that (1) represented the surveillance video equipment to be motion activated; (2) expanded the scope of the engaging in a pattern of corrupt activity charge to events beyond the predicate offenses listed in the indictment; and (3) urged the jury to consider the photographs of the tattoo for an impermissible purpose.  In *Groce I*, we considered Groce's argument as it related to the first and third of these allegations, and we found the argument moot as it related to the second of these statements since it related to his conviction of engaging in a pattern of corrupt activity.  As the Supreme Court's decision in *Groce II* found sufficient evidence to support Groce's conviction of engaging in a pattern of corrupt activity, we now consider his argument under his fourth assignment of error related to the prosecutor's statements allegedly expanding the scope of the engaging in a pattern of corrupt activity charge.

{¶ 7}   Courts afford prosecutors wide latitude in closing arguments, and prosecutors may draw reasonable inferences from the evidence at trial, commenting on those inferences during closing argument.  *State v. Hunt*, 10th Dist. No. 12AP-1037, 2013-Ohio-5326, ¶ 18.  The test for prosecutorial misconduct in closing arguments "is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant."  *State v. Smith*, 14 Ohio St.3d 13, 14 (1984), citing *United States v. Dorr*, 636 F.2d 117 (5th Cir.1981).  " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Wilkerson*, 10th Dist. No. 01AP-1127, 2002-Ohio-5416, ¶ 38, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  Thus, prosecutorial misconduct is not grounds for

reversal unless the defendant has been denied a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984).

{¶ 8} Groce argues the state deprived him of a fair trial when, during its rebuttal argument, the prosecutor commented that as of March 29, 2016, the drug house had all of the items it would need to engage in a pattern of corrupt activity and that it was "an ongoing place of business." (Tr. Vol. IV at 966.) Defense counsel objected that the state was attempting to expand the predicate offenses to the charge of engaging in a pattern of corrupt activity beyond the one day contained in the indictment. The trial court overruled the objection and allowed the prosecutor to continue. On appeal, Groce argues the prosecutor's statements were improper because the state did not indict Groce for any offenses beyond the single day of the video footage, March 29, 2016. Thus, Groce asserts that the state limited its ability to demonstrate the existence of an enterprise beyond the indicted offenses.

{¶ 9} These statements relate to the longevity of the enterprise necessary to demonstrate a pattern of corrupt activity. Though we held in *Groce I* that the state did not satisfy the longevity element, the Supreme Court disagreed and held that "a rational juror could have found beyond a reasonable doubt that Groce participated in an association-in-fact enterprise with sufficient longevity to further its purpose." *Groce II* at ¶ 8. The Supreme Court elaborated in *Dent*, stating:

> Evidence of longevity sufficient to further the purpose of the enterprise is demonstrated by Detective Gauthney's spot checks and his surveillance reports from March 11 and 15, the confidential informant's purchase of drugs, and the videos obtained at the time of the search on March 29. Together, this evidence demonstrates that activity consistent with an "up-and running drug house" had been occurring since at least late February when Gauthney received the complaints that prompted further investigation. Additionally, Gauthney observed Walker at the house on March 15 using the back door without knocking and staying longer than a few minutes, which is activity that stands in contrast to the more frequent visitors Gauthney observed knocking and entering the front door of the house and staying only five to ten minutes. Even if we focused solely on March 29, the day the video evidence was recorded, appellees performed the tasks necessary to further the enterprise's purpose of selling crack cocaine out of the house.

> And, based on appellees' conduct and interaction in the house on March 29 that is distinguishable from the frequent yet short-term visitors observed at the house, it is reasonable to infer that their activities with the enterprise extended beyond a single day.

*Dent* at ¶ 23.

{¶ 10} Even if we were to agree with Groce that the terms of the indictment did, in fact, limit the state's ability to demonstrate the existence of an enterprise to only March 29, 2016, the Supreme Court specifically found in *Dent* that the conduct observed in the video from March 29, 2016, on its own, constituted evidence showing sufficient longevity showing a common purpose and relationships in furtherance of that purpose. *Dent* at ¶ 23. Thus, as the Supreme Court determined the video evidence, alone, constituted sufficient evidence of the enterprise, Groce cannot demonstrate that the prosecutor's statements about the conduct observed beyond March 29, 2016 prejudiced him or deprived him of a fair trial. *Hunt* at ¶ 18 ("[a] defendant is entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant"), citing *Smith* at 14. Accordingly, we overrule the remaining portion of Groce's fourth assignment of error.

**IV. Fifth Assignment of Error – Ineffective Assistance of Counsel**

{¶ 11} In his fifth assignment of error, Groce argues he received the ineffective assistance of counsel.

{¶ 12} In order to prevail on a claim of ineffective assistance of counsel, Groce must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Groce to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If Groce can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, Groce must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 13} In considering claims of ineffective assistance of counsel, courts review these claims with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Groce contends his trial counsel was ineffective in (1) failing to object to the admission of the police report; (2) failing to request a continuity instruction related to the charge of engaging in a pattern of corrupt activity; and (3) failing to insist that the trial court correct the prosecutor's characterization of the surveillance system as motion activated. In *Groce I*, we overruled this assignment of error as it related to Groce's first and third allegations of ineffective assistance of counsel, finding moot his argument related to the second allegation of ineffective assistance of counsel. Pursuant to the Supreme Court's decision in *Groce II*, we now address Groce's argument that his trial counsel was ineffective in failing to request a continuity instruction related to the charge of engaging in a pattern of corrupt activity.

{¶ 14} Groce argues his trial counsel was ineffective in failing to request an instruction that the offense of engaging in a pattern of corrupt activity requires the state to prove "continuous activity." Groce relies on the Supreme Court's statement that proof of a defendant's conduct or participation in an enterprise through a pattern of corrupt activity "must include both a relationship and continuous activity, as well as proof of the existence of an enterprise." (Internal quotations omitted.) *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, ¶ 13. We note, however, that continuity is not an element of R.C. 2923.32. Additionally, this argument relates to the state's burden to prove Groce participated in the affairs of an enterprise under R.C. 2923.32(A)(1). As the Supreme Court found in *Groce II*, there was sufficient evidence to sustain Groce's conviction of engaging in a pattern of corrupt activity, Groce cannot demonstrate his counsel was deficient in failing to request an additional instruction on continuity. Thus, we overrule the remaining portion of Groce's fifth assignment of error.

## V. Seventh Assignment of Error – Separate Firearm Specification

{¶ 15} In his seventh assignment of error, Groce argues the trial court erred in imposing his sentence. Specifically, the trial court merged Groce's convictions under Counts 2 and 3 of the indictment, first-degree felony trafficking in cocaine and first-degree felony possession of cocaine. On appeal, Groce asserts the trial court additionally should

have (1) merged his four convictions for fifth-degree felony trafficking in cocaine and their attendant firearm specifications under Counts 5, 6, 7, and 12 with his conviction for first-degree felony trafficking in Count 2; (2) merged his conviction for fifth-degree felony trafficking under Count 12 and the attendant firearm specification with any of the fifth-degree felony trafficking convictions under Counts 5, 6, and 7; and (3) not imposed a separate one-year prison term for the firearm specification attached to his conviction of engaging in a pattern of corrupt activity under Count 1 of the indictment. In *Groce I*, we considered Groce's seventh assignment of error as it related to the first two of these arguments and found the trial court did not err in imposing the sentence on those counts. The sole remaining issue under this assignment of error on remand is whether the trial court erred in imposing a separate one-year prison term on the firearm specification attached to his conviction of engaging in a pattern of corrupt activity.

{¶ 16} An appellate court will not reverse a trial court's sentencing decision unless the evidence is clear and convincing that either the record does not support the sentence or that the sentence is contrary to law. *State v. Chandler*, 10th Dist. No. 04AP-895, 2005-Ohio-1961, ¶ 10, citing *State v. Maxwell*, 10th Dist. No. 02AP-1271, 2004-Ohio-5660, ¶ 27, citing *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, ¶ 10. *See also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Groce argues the trial court's imposition of a separate one-year prison term on the firearm specification attached to his engaging in a pattern of corrupt activity charge is contrary to law.

{¶ 17} Here, the jury found Groce guilty of firearm specifications under R.C. 2941.141(A), having a firearm on his person or under his control while committing the offenses. Thus, R.C. 2929.14(B)(1)(a)(iii) mandates the sentencing court impose a one-year prison term for the specifications unless R.C. 2929.14(B)(1)(b) applies. *See State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, ¶ 8-9. Pursuant to R.C. 2929.14(B)(1)(b), the sentencing court may not impose more than one sentence for multiple firearm specifications if the underlying felonies with the attendant specifications arose from "the same act or transaction."

{¶ 18} Groce maintains that his conviction of engaging in a pattern of corrupt activity necessarily arose from the same act or transaction as the underlying drug trafficking and possession felonies since the state relied on those underlying offenses to constitute the

pattern of corrupt activity. However, the Supreme Court has explained that although a conviction of engaging in a pattern of corrupt activity is dependent upon the commission of predicate acts, the engaging in a pattern of corrupt activity charge also addresses the defendant's *additional* conduct of association with the enterprise and participation in conduct in furtherance of the enterprise. *Miranda* at ¶ 13 ("the conduct required to commit a RICO violation is independent of the conduct required to commit" the underlying predicate offenses); *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, ¶ 5. *See* also *State v. Christian*, 2d Dist. No. 25256, 2016-Ohio-516, ¶ 35 ("[t]he argument that predicate offenses should be merged with a conviction for engaging in a pattern of corrupt activity has been consistently rejected by Ohio courts, on the basis that 'a RICO violation is a discrete offense that can be prosecuted and punished separately from its underlying predicate offenses"). Thus, we do not agree with Groce that the firearm specification attached to his conviction of engaging in a pattern of corrupt activity arose from the same act or transaction as the underlying drug trafficking and possession offenses.

{¶ 19} As the trial court did not err in imposing a separate one-year sentence on the firearm specification attached to Groce's conviction of engaging in a pattern of corrupt activity, we overrule the remaining portion of Groce's seventh assignment of error.

## VI. Disposition

{¶ 20} Based on the foregoing reasons, the prosecutor's statements did not deprive Groce of a fair trial, Groce did not receive the ineffective assistance of counsel, and the trial court did not err in imposing Groce's sentence. Having overruled the remaining portions of Groce's fourth, fifth, and seventh assignments of error that we deemed moot in *Groce I*, and in accordance with the Supreme Court of Ohio's decision in *Groce II*, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and BROWN, J., concur.