[Cite as *State v. Clark*, 2024-Ohio-4976.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-T-0030 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| NICHOLAS ALEXANDER CLARK, | |
| Defendant-Appellant. | Trial Court No. 2023 CR 00730 |

**O P I N I O N**

Decided: October 15, 2024
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Eric D. Hall*, P.O. Box 232, Medina, OH 44258 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1} Appellant, Nicholas Alexander Clark, appeals the judgment of conviction on multiple charges of rape and one charge of gross sexual imposition. We affirm.

{¶2} In 2022, Clark's minor nephews disclosed to their parents that Clark had acted inappropriately toward them. In 2023, Clark was indicted on charges based upon the nephews' allegations. With respect to the younger nephew, born in 2009, Clark was charged in counts one, two, and three with first-degree felony rape of a child less than 13 years of age, in violation of R.C. 2907.02(A)(1)(b) and (B), with factual findings that Clark purposely compelled the victim to comply through force or the threat of force pursuant to

2971.03(B)(1)(c), and with a factual finding attendant to the third count that the victim was less than ten years of age pursuant to R.C. 2971.03(B)(1)(b). Also, with respect to the younger nephew, Clark was charged in count four with third-degree felony gross sexual imposition of a child less than thirteen years of age, in violation of R.C. 2907.05(A)(4) and (C). With respect to the older nephew, born in 2008, Clark was charged in counts five and six with first-degree felony rape, in violation of R.C. 2907.02(A)(2) and (B). Also, with respect to the older nephew, in counts seven and eight, Clark was charged with first-degree felony rape of a child less than thirteen years of age, in violation of R.C. 2907.02(A)(1)(b) and (B), with factual findings that the victim was less than ten years of age pursuant to R.C. 2971.03(B)(1)(b) and that Clark purposely compelled the victim to comply through force or the threat of force pursuant to 2971.03(B)(1)(c).

{¶3} Clark pleaded not guilty to the charges, and the case proceeded to jury trial. The jury found Clark guilty on all charges and found that he did commit the offenses in accordance with the factual findings identified in the indictment. Thereafter, the court imposed concurrent prison sentences of 25 years to life on count one, 25 years to life on count two, life without parole on count three, 48 months on count four, 10 to 15 years on count five, 10 years on count six, life without parole on count seven, and life without parole on count eight, for a total prison sentence of life without parole.

{¶4} In his first and second assigned errors, Clark contends:

> [1.] The evidence was insufficient to support the jury's verdicts of "guilty" with respect to the charged offenses of Rape in Counts I-III and V-VIII, and with respect to the charged offense of Gross Sexual Imposition in Count IV.

> [2.] Defendant-Appellant's convictions as to all counts were against the manifest weight of the evidence.

2

Case No. 2024-T-0030

{¶5} The question of whether sufficient evidence supports a conviction "is a test of adequacy," which we review de novo. *State v. Thompkins*, 1997-Ohio-52, 386. "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 2020-Ohio-6670, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶6} Unlike a review of the sufficiency of the evidence, our review of the "[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence . . .* to support one side of the issue rather than the other.'" (Emphasis in original.) *Thompkins* at 387, quoting *Black's Law Dictionary* (6th Ed. 1990). When considering challenges to the weight of the evidence, an appellate court reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'"' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin* at 175.

Case No. 2024-T-0030

{¶7} Here, the jury found Clark guilty of four counts of rape pertaining to Clark's older nephew and three counts of rape pertaining to Clark's younger nephew, and one count of gross sexual imposition pertaining to Clark's younger nephew. Two of the rape counts as to the older nephew and all of the rape counts as to the younger nephew were charged under former R.C. 2907.02(A)(1)(b), which provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person . . . ."[1] The remaining two rape counts as to the older nephew were charged under former R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when the offender purposely compels the other person to submit by force or threat of force."[2] "Sexual conduct" includes anal intercourse. R.C. 2907.01(A). "Penetration, however slight, is sufficient to complete vaginal or anal intercourse." *Id.*

{¶8} With respect to "force" as an element of R.C. 2907.02(A)(2) and as a factual finding pursuant to R.C. 2971.03(B)(1)(b), R.C. 2901.01(A)(1) defines "force" as any "violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In *State v. Eskridge*, 38 Ohio St.3d 56 (1988), paragraph one of the syllabus, which involved the rape of a child by a parent, the Ohio Supreme Court held:

---

1. R.C. 2907.02(A) was recently amended affective August 9, 2024 to remove the following language "who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender[.]"

2. *See* footnote one.

4

> The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength.

The Court further stated, "Force need not be overt and physically brutal, but can be subtle and psychological," and the forcible element of rape can be established "[a]s long as it can be shown that the rape victim's will was overcome by fear or duress[.]" *Id.* at 58-59. Thereafter, in *State v. Dye*, 1998-Ohio-234, syllabus, the Ohio Supreme Court held, "A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint."

{¶9} Here, the trial court instructed the jury on the *Eskridge/Dye* definition of "force" without objection, as follows:

> When a relationship between the victim and Defendant is one of child and parent or other authority figure, the element of force need not be openly displayed or physically brutal. It can be subtle or slight and psychological or emotionally powerful. Evidence of an expressed threat of harm or evidence of significant physical restraint is not required. If you find beyond a reasonable doubt that under the circumstances in evidence the victim's will was overcome by fear, duress, or intimidation, the element of force has been proven.

{¶10} In addition to the rape counts, with respect to Clark's younger nephew, Clark was charged with gross sexual imposition, in violation of R.C. 2907.05(A)(4), which provides, "No person shall have sexual contact with another; cause another to have sexual contact with the offender; or cause two or more other persons to have sexual contact when . . .[t]he other person, or one of the other persons, is less than thirteen years

5

of age, whether or not the offender knows the age of that person." "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶11} In support of the charges at trial, the State presented the testimony of Clark's two nephews, the nephews' parents, a police officer, and a nurse practitioner.

{¶12} The testimony indicated that Clark's nephews, who had never been married, were aged 14 and 15 at the time of trial in 2024, and are the children of Clark's sister and her husband. The family lived in a trailer in Girard, Ohio, until approximately 2017, when they moved to a house in Niles, Ohio, where they continued to reside. When his sister's family lived in Girard, Clark resided with his brother at a house in Liberty, Ohio. At some point thereafter, Clark, his brother, and his brother's girlfriend moved in with Clark's sister's household at the Niles residence. Clark stayed in a bedroom in the basement of the Niles home. After several months, Clark's brother and his girlfriend moved from the house, but Clark continued living in his sister's residence for approximately a year before moving. However, he later returned to live at his sister's residence in approximately February 2021, on the condition that he remain employed. In about February 2022, Clark quit his job, and his sister's husband directed Clark to move from the home, which he did.

{¶13} Clark's sister indicated that while Clark was residing with her family, he would babysit the nephews. Clark's sister had instructed the boys to do as Clark told them. The sister had noticed that Clark's older nephew would sometimes disrespectfully leave a room if Clark entered. Clark's sister instructed the boy to be polite, and not to "be mean" to Clark.

6

{¶14} In addition, with respect to the older nephew, Clark's sister and her husband noticed that the boy had become combative and argumentative, and he had begun isolating himself quite frequently while Clark resided with them. The older nephew also gained significant amounts of weight over short periods of time. Further, the older nephew became very protective of his younger sister, who was born in 2019. The boy would isolate himself and his sister in his parents' room, and, when asked, explained that he did not want the sister around Clark because Clark was smoking around her. The father did not believe Clark was smoking around the child, as he could not smell any odor of residual cigarette smoke in the home, but he did not press the issue with the child at that time. The older nephew also repeatedly told his parents that he wanted Clark to move from their home because he wanted Clark's basement bedroom. However, once Clark moved from the home, the boy did not move into the basement bedroom, and did not again mention any desire to do so.

{¶15} Clark's sister explained that the older nephew has a disease affecting his kidney function, for which he has seen a doctor once a month since he was approximately four years old. The boy has also attended weekly therapy sessions for several years due to his attitude and anger issues. Clark's sister acknowledged that neither his medical providers nor the therapist had indicated any suggestion of sexual abuse prior to the nephew's disclosure in 2022.

{¶16} The nephews' parents also noticed changes in the younger nephew's behavior. The child became very withdrawn and began gaining a considerable amount of weight. In addition, the child began having nightmares in 2019, and he was not sleeping well.

{¶17} Several months after Clark had moved from his sister's home in 2022, Clark's older nephew disclosed to his parents that Clark had inappropriately touched him. The older nephew and his father reported the abuse to police. Thereafter, the child's therapist recommended a family session to discuss this issue. The mother then asked the younger nephew if Clark had ever touched him, at which point Clark's younger nephew disclosed sexual abuse to his mother. The next day, Clark's sister took Clark's younger nephew to the police department to make a report.

{¶18} At trial, the older nephew testified that Clark first began sexually "harassing" him when he was eight or nine years old at the Liberty residence of Clark's brother, where Clark was residing at the time. The nephew estimated that Clark had "harass[ed]" him on about thirty occasions at Clark's brother's home and later at the nephew's residence in Niles. The nephew testified to four specific instances of sexual abuse.

{¶19} On one occasion, when he was eight or nine years old, the nephew recalled that he was at the home of Clark's brother while Clark was residing with him. Clark asked the nephew to come into his room and get into his bed. Clark then asked his nephew to pull down his pants. The nephew removed his shorts and underwear, and Clark instructed him to bend over on his bed. Clark pulled down his pants and underwear behind the child and inserted his penis into the child's buttocks. The child recalled that this was painful. Clark told the child that if he were to tell anyone about the incident, something "bad" would happen.

{¶20} On another occasion at Clark's brother's home, when the nephew was eight or nine, he recalled that he was sleeping in the living room on the floor. The nephew awoke and went to the bathroom. When the nephew returned to the living room, Clark

8

asked him to go into his bedroom to play a video game with him. The child complied. After playing the game for some time, Clark told him to take off his clothes. Clark then undressed as he told the nephew to get on the bed. The nephew did so, and Clark inserted his penis into the nephew's buttocks.

{¶21} The older nephew further testified as to sexual abuse occurring at his Niles home. The nephew recalled that he was in the basement game room during the period of time that Clark last lived with his family, when the nephew was thirteen years old. The child then retrieved a snack from the basement pantry, and began to ascend the stairs, when Clark grabbed the child's arm and pulled him down the stairs to Clark's bedroom. Clark then told the child to remove his clothes and place his hands on Clark's bed. Clark removed his clothing and inserted his penis in the nephew's buttocks.

{¶22} On another occasion, shortly before Clark moved from the home in 2022, Clark asked the nephew to go to his room and get onto his bed. Clark instructed the nephew to place his hands on the bed, and Clark inserted his penis into the nephew's buttocks. The nephew recalled that Clark ejaculated and cleaned up the ejaculate with a rag.

{¶23} The younger nephew testified that, beginning when he was approximately eight years old, Clark raped him at his former residence in Girard, Ohio. The younger nephew recalled that he was in second grade at the time. The nephew explained that he entered the bathroom, where Clark was then located, and Clark was nude. Clark told the nephew to pull down his pants and to kneel over the toilet. Clark then inserted his penis in the nephew's buttocks. The nephew recalled that it hurt, but he did not tell anyone

9

because Clark had told him that, if he told anyone, they would have to go to court, and this scared the child.

{¶24} The younger nephew further recalled that, the last time that Clark lived with the nephew's family at their Niles residence, the nephew was playing a video game on a console in the basement during the fall. Clark was in his room in the basement and told the nephew to come into his room, and he took off his and the nephew's clothes. Clark instructed the nephew to put his penis in Clark's buttocks, and he kneeled on the floor with his hands on the bed. The nephew complied. Clark then told the nephew to kneel by Clark's bed, and he then inserted his penis in the nephew's buttocks. Thereafter, Clark ejaculated into a towel.

{¶25} The younger nephew further testified that, on a different day that fall, the nephew was in the bathroom, sitting on the toilet with his pants down. Clark entered the bathroom and began rubbing the nephew's penis. Clark again told the nephew not to tell anyone, otherwise they would go to court, and Clark would go to jail. The nephew remembered first telling Clark not to touch him when he was about ten years old, and Clark did stop at that time, but there were two other times he told Clark to stop, and he did not.

{¶26} The testimony adduced at trial further indicates that, following their reports to law enforcement, the nephews were taken for medical diagnostic interviews and physical examinations at the Akron Children's Hospital Child Advocacy Center. The nephews both disclosed anal penetration by Clark during the interviews. Rape kits were not conducted on the nephews because five to six months had passed since the last reported instance of sexual conduct, and, because both boys had begun puberty, a rape

10

kit would not be effective past 96 hours of sexual conduct. There was no evidence of injury to either child, and the results of tests for sexually transmitted infections were negative. The nurse practitioner, qualified as an expert in child sexual abuse, testified that these findings were not unexpected, as only a small percentage of boys who have experienced sexual abuse through anal penetration display any injuries, particularly when the abuse occurred months prior to the examination. The nurse further indicated that delayed disclosure of sexual abuse is quite common, particularly with males and those who have been abused by family members. The nurse acknowledged that a normal physical examination neither evidences, nor rules out, sexual abuse. The nurse indicated that children who have experienced sexual abuse may experience psychosocial or behavioral consequences such as depression, anger, eating disorders, difficulty sleeping, and acting out.

{¶27} After presenting the above evidence, the State rested, and Clark moved for acquittal pursuant to Crim.R. 29. The court denied the motion, and Clark then presented the testimony of his brother, his brother's fiancée, and the former girlfriend of another of Clark's brothers, who had died the year prior to trial.

{¶28} Clark's brother testified that he lived in Liberty for about 18 months during 2016 and 2017, with his girlfriend and Clark. Clark's brother would see the nephews at his sister's mobile home in Girard four to five times per week. Clark would stay at the Liberty residence when Clark's brother visited the Girard residence. The brother recalled that the older nephew spent the night at his Liberty residence on one occasion, and the younger nephew sometimes would spend the night. However, when the younger nephew stayed the night, he would sleep in the bedroom of Clark's brother and his fiancée. The

11

nephews never indicated to Clark's brother that anything inappropriate was happening in his home in Liberty. In 2018, Clark's brother, his fiancée, and Clark moved into Clark's sister's residence. Clark's brother and fiancée lived in the sister's studio apartment over the garage, where they resided for nearly a year. Clark's brother would see the nephews every day during that period, and he never witnessed any indication that the nephews were being sexually abused. After living with Clark's sister, Clark's brother and his fiancée moved to a home in Girard, where they have lived since. Clark's sister and nephews would visit Clark's brother at his Girard home, and they did not indicate to Clark's brother that any sexual abuse occurred in that home.

{¶29} Clark's brother's fiancée testified that she had known Clark for nine years. Clark lived with his brother and his fiancée in Liberty and in Girard. Clark's brother and his fiancée were close friends with Clark's sister and her husband. They visited each other's homes multiple times a week. There was only one occasion that the older nephew stayed the night at the Liberty home. The younger nephew would spend the night more often, but he was very young at the time and would sleep in the room with Clark's brother and fiancée. The fiancée further confirmed that she, Clark's brother, and Clark moved into Clark's sister's home when the Liberty residence required remodeling. She never witnessed any inappropriate behavior at any of the residences.

{¶30} The girlfriend of another of Clark's brothers, who passed away a year prior to trial, testified that she dated Clark's brother for about 10 years prior to his death. Clark's family was very close, and she saw Clark's nephews once or twice per month. She never witnessed any inappropriate behavior between Clark and his nephews.

12

{¶31} Following the testimony of these witnesses, the defense rested and renewed its Crim.R. 29 motion for acquittal, which the trial court overruled.

{¶32} Thereafter, the jury found Clark guilty on all counts and determined that Clark committed the offenses in accordance with the factual findings alleged in the indictment.

{¶33} On appeal, Clark contends that the State produced insufficient evidence that Clark engaged in "sexual conduct" or had "sexual contact" with his nephews. However, as set forth above, both nephews testified that Clark anally penetrated them with his penis on several occasions, and the younger nephew testified that Clark instructed him to penetrate Clark's anus with his penis on one occasion. This evidence is sufficient to establish the element of sexual conduct in support of the rape charges. Further, Clark's younger nephew testified that Clark rubbed the nephew's penis while he was seated on the toilet. This testimony was sufficient to establish sexual contact for purposes of the gross sexual imposition charge.

{¶34} In further arguing that his convictions should be reversed for failure to establish sexual conduct or sexual contact, Clark maintains that the State produced no evidence corroborating the nephews' testimony, and the evidence adduced at trial indicated that Clark had relationships with women during the period at issue. In addition, Clark points to the evidence that the older nephew did not disclose the abuse sooner to healthcare providers, despite his frequent visits. Further, Clark relies on the evidence that the nephews did not make any disclosure closer in time to the abuse to family members and those close to the family, despite their frequent contact and close relationships.

13

Moreover, close members of the family, including those who resided with the nephews' immediate family, did not suspect or witness any sexual abuse of the nephews.

{¶35} However, none of the evidence on which Clark relies, as set forth above, contradicts the nephews' testimony, and, to the extent that it may bear on the nephews' credibility, the jury, as the trier of fact, was "entitled to believe all, part, or none of [the nephews'] testimony." *State v. Shannon*, 2021-Ohio-789, ¶ 43 (11th Dist.), citing *State v. Williams*, 2013-Ohio-2040, ¶ 21 (11th Dist.). We generally defer to the trier of fact on issues of credibility, as "'[t]he trier of fact is in the best position to evaluate inconsistencies in testimony by observing the witness's manner and demeanor on the witness stand—attributes impossible to glean through a printed record.'" *Shannon* at ¶ 43, quoting *Williams* at ¶ 21.

{¶36} Further, corroborating evidence and/or physical evidence of sexual conduct is not required to support a conviction. Instead, the jury may rely on the victims' testimony alone. *See State v. Henderson*, 2002-Ohio-6715, ¶ 36 (11th Dist.) ("When prosecuting an offender for rape, the state is not required to provide physical evidence of penetration. Rather, all the state must do is establish, beyond a reasonable doubt, that sexual conduct occurred. This may be accomplished through either physical evidence and/or witness testimony."). This is not a case where the evidence weighs heavily against the conviction on the elements of sexual conduct or sexual contact.

{¶37} Next, Clark maintains that there existed insufficient evidence of "force" to support the factual findings contained in counts three, seven, and eight. Count three pertained to the younger nephew's allegation that, when the boy's family lived in the Girard trailer, Clark entered the bathroom with the boy, instructed him to put his hands on

14

the toilet and kneel over it, and engaged in anal intercourse with the boy. Count seven, pertained to the older nephew's allegation that, while Clark was residing with his brother in Liberty, Ohio, Clark instructed the older nephew to go to Clark's bedroom, where Clark engaged in anal intercourse with the boy. Count eight pertained to the older nephew's allegation that he was spending the night at Clark's brother's Liberty home, and he awoke from sleeping on the living room floor to use the bathroom, and when he returned to the living room, Clark instructed him to come into his bedroom, where he again engaged in anal intercourse with the boy.

{¶38} On appeal, Clark maintains that neither child testified as to any violence, compulsion, or physical restraint, and there existed no physical evidence of force.

{¶39} However, as set forth above, an authority figure's use of "force" with respect to children may be subtle and psychological. Here, the conduct alleged in the three counts at issue occurred when the children were seven to nine years old and at the instruction of Clark, the boys' adult uncle. The nephews' testimony was sufficient to establish force for purposes of these three counts, and we cannot say that the jury lost its way in determining that Clark purposely compelled the nephews to submit by force or threat of force.

{¶40} Further, with respect to count three, Clark maintains that the testimony of his brother and his brother's fiancée established that Clark did not visit the nephews' family when they resided at the Girard trailer. In addition, with respect to counts seven and eight, Clark maintains that the testimony of his brother and his brother's fiancée established that the older nephew only once spent the night at their home in Liberty, where the nephew alleged that the offenses occurred on two separate occasions.

15

However, we generally defer to the factfinder on issues of credibility, and the jury's resolution of the conflicting testimony in favor of the State in this case does not render its decision against the weight of the evidence. *See Shannon*, 2021-Ohio-789, at ¶ 43 (11th Dist.).

{¶41} Accordingly, Clark's first and second assignments of error lack merit.

{¶42} In his third assigned error, Clark maintains:

{¶43} "The trial court erred by sentencing Defendant-Appellant to life terms as to the charged rape offenses in Counts III, VII, and VIII."

{¶44} Our standard of review of felony sentences is set forth in R.C. 2953.08(G)(2), which provides:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶45} Clark maintains that the trial court erred in imposing sentences of life without parole on counts three, seven, and eight. In support of his third assigned error, Clark points to his lack of a prior criminal history, which was acknowledged by the trial court at

16

sentencing, and he contends that the facts and circumstances of this case do not warrant sentences of life without parole on these three counts.

{¶46} When sentencing a felony offender, a trial court is guided by the principles and purposes of felony sentencing under R.C. 2929.11 and R.C. 2929.12. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 2020-Ohio-6729, ¶ 42. Thus, this court lacks authority to independently weigh the evidence in the record and substitute our judgment for the trial court as to the sentence that best achieves the purposes and principles of sentencing. *Id.*

{¶47} To the extent that Clark's argument may be read as challenging his sentences as otherwise contrary to law, the Ohio Supreme Court has held that "a sentence is contrary to law when it is 'in violation of statute or legal regulations.'" *State v. Meeks*, 2023-Ohio-988, ¶ 11 (11th Dist.), quoting *Jones* at ¶ 34.

{¶48} Here, the sentences at issue were imposed on three counts on which the jury found Clark guilty of R.C. 2907.02(A)(1)(b) and found that he did commit the offenses through force or the threat of force. Pursuant to R.C. 2907.02(B), "notwithstanding sections 2929.11 to 2929.14 of the Revised Code, an offender under [R.C. 2907.02(A)(1)(b)] shall be sentenced to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code."

{¶49} Thus, pursuant to statute, based upon the findings on the three counts at issue, the trial court was authorized to impose one of two sentences for each of the counts. First, pursuant to R.C. 2971.03(B), based on the findings of force, the trial court

17

was authorized to impose a minimum term of twenty-five years and a maximum of life imprisonment on each of these counts. R.C. 2971.03(B)(1)(c). Alternatively, because the jury also found that the nephews were under age ten at the time of the offenses alleged in these counts, the trial court was authorized to impose prison terms of life without parole, which the trial court did impose on these counts. R.C. 2907.02 ("if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, except as otherwise provided in this division, the court may impose upon the offender a term of life without parole"). Therefore, Clark's sentences on these counts are not contrary to law.

{¶50} Accordingly, Clark's third assigned error lacks merit.

{¶51} The judgment is affirmed.


MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur.

18

Case No. 2024-T-0030