[Cite as *State v. Paul*, 2025-Ohio-2203.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellee,              :

                                              No. 23AP-505
v.                                                :        (C.P.C. No. 21CR-1967)

Deandre E. Paul, Jr.,                             :        (REGULAR CALENDAR)

      Defendant-Appellant.             :

---

D E C I S I O N

Rendered on June 24, 2025

---

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, *Paige A. Lane*, and *Michael A. Walsh*, for appellee. **Argued:** *Paige A. Lane.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd. W. Barstow.*

---

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendant-appellant, Deandre E. Paul, Jr., appeals from the jury verdict finding him guilty of assault in violation of R.C. 2903.13, two counts of failure to comply with an order of a police officer in violation of R.C. 2921.331, and obstructing official business in violation of R.C. 2921.31. Mr. Paul challenges the convictions on the grounds of the legal sufficiency and manifest weight of the evidence, and argues as well that the trial court erred by imposing consecutive sentences. Plaintiff-appellee, State of Ohio, concedes the sentencing error raised by Mr. Paul. Finding no error on the other grounds raised, we affirm in part, reverse in part, and remand for resentencing.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On May 18, 2021, Mr. Paul was indicted on one count of assault in violation of R.C. 2903.13, two counts of failure to comply with an order of a police officer in violation

of R.C. 2921.331, and obstructing official business in violation of R.C. 2921.31.

{¶ 3}  At trial, the state's first witness was Deputy Gary Pavlic of the Franklin County Sheriff's Office.  Deputy Pavlic testified that he worked at the courthouse, including the courtroom where Mr. Paul's trial was being held.  (May 16, 2023 Tr. Vol. II at 82.)  Mr. Paul was not in the courtroom because he had refused to attend trial or participate in his own defense.  *Id.* at 43-69.  When shown a photograph of Mr. Paul, Deputy Pavlic identified him as the defendant.  *Id.* at 83.  The photograph was admitted into evidence as State's Exhibit L.  *Id.*

{¶ 4}  The state then called Officer Robert King of the Reynoldsburg Police Department.   He testified that he responded to a call at an apartment building at 6895 Greenleaf Drive in the early afternoon of May 9, 2021.  *Id.* at 88-89.  The call concerned a person on the premises with a known warrant.  *Id.* at 92.  The warrant was for Mr. Paul, and Officer King was provided with his physical description.  *Id.* at 93.

{¶ 5}  After Officer King and another patrol officer arrived, they saw Mr. Paul getting into a car.  *Id.*  They ran to the car and stopped Mr. Paul as he was attempting to drive away.  *Id.* at 94.  His partner could see a medical wristband that Mr. Paul was wearing that confirmed his identity.  *Id.*  While his partner had Mr. Paul "distracted," Officer King put his hand in the door with the intention of unlocking it to open the door and detain Mr. Paul before he could drive away.  *Id.*  However, Mr. Paul rolled the window up and began to drive off.  *Id.* at 95.  With his other hand, Officer King "punched the window out" to free his hand so that he would not be dragged by the moving vehicle.  *Id.*

{¶ 6}  After Officer King freed his hand, Mr. Paul began to drive away.  *Id.*  The officers "told him to stop."  *Id.*  However, Mr. Paul instead fled, almost striking an arriving police car as he "cut through the grass" to avoid it.  *Id.* at 96.  Officer King and his partner ran to their vehicles and began pursuing Mr. Paul with their lights and sirens activated.  *Id.*

{¶ 7}  During the car chase, Mr. Paul had to turn around after turning onto a dead end.  *Id.*  After that, he drove too fast on a road with "a very, very sharp curve," causing him to lose control of the vehicle and end up in the grass in a front yard.  *Id.*  The officers then arrested Mr. Paul, who "decided to drop his body weight" and became "belligerent" as they put him into the backseat of a cruiser.  *Id.* at 99.  A video recording from Officer King's body camera of the incident was played for the jury and admitted as State's Exhibit E.  *Id.* at 104.

In addition, a video from the cruiser's camera was played for the jury and admitted as State's Exhibit F. *Id.* at 111.

{¶ 8} Officer King testified that as a result of the incident, he wore a brace on his right hand for two weeks. *Id.* at 112. He identified several photographs of the injury, including one that showed his hand as "extremely swollen and cut up." *Id.* at 114. He described the pain as extreme and said that he could barely move his thumb. *Id.* When shown the photograph of Mr. Paul, Officer King identified him as the man they arrested. *Id.* at 115.

{¶ 9} On cross-examination, Officer King affirmed that an officer's "number one priority" when called to a scene is "officer safety." *Id.* at 131. He also confirmed that his training included a prohibition on reaching into a motor vehicle because of the danger of a body part or piece of equipment getting stuck if the vehicle were to move. *Id.* at 137-38. Officer King admitted that he made the conscious decision to "go against" his training in an effort to prevent Mr. Paul from leaving because of the potential of "someone getting hit, or him killing himself or someone else" during a car chase. *Id.* at 141.

{¶ 10} The state's final witness was Detective Mikayla Relli of the Reynoldsburg Police Department, who was working as a patrol officer on May 9, 2021. *Id.* at 152-53. She was also called to the apartment complex that day based on Mr. Paul's warrant. *Id.* at 155. Her body-worn camera recorded the interaction with him, which was played for the jury and admitted as State's Exhibit H. *Id.* at 157. Detective Relli testified that Mr. Paul was attempting to leave the area in his vehicle. *Id.* She described the medical wristband that he wore that stated his first and last name, which she "could see through the window" of his car while speaking to him. *Id.* at 158.

{¶ 11} After informing Mr. Paul that they had a warrant for his arrest, he replied that "he didn't have a warrant and he wasn't going to get out of the car." *Id.* at 160. Detective Relli then radioed to dispatch that he was not being cooperative "just in case" more backup was required. *Id.* She saw Officer King "reach inside of the vehicle to hit the unlock button," after which "Mr. Paul began to roll the window up, which trapped Officer King's wrist or hand inside the vehicle." *Id.* at 162-63. Both officers told him to stop as he began to drive. *Id.* at 158. She recounted how Officer King had to "step or jog with the vehicle" as Mr. Paul accelerated before he could free his hand. *Id.* 163-64.

{¶ 12} According to Detective Relli, the car chase lasted about two minutes through a residential neighborhood of "single-family homes [and] sidewalks" with pedestrians. *Id.* at 167. The weather was "gloomy" and it was "raining off and on that day." *Id.* at 168. The lights and sirens on her cruiser were activated during the case. *Id.* at 166. She did not see Mr. Paul's car stop, but the pursuit ended when she "came around the corner" and saw it "stopped in the front yard," after which she and Officer King arrested him. *Id.* at 168. Detective Relli identified Mr. Paul as the man they arrested. *Id.* at 185.

{¶ 13} The jury returned guilty findings on all four counts. The trial court reduced the second of two counts of failing to comply with an order of a police officer from a third-degree felony to a first-degree misdemeanor, due to the manner the charge was presented to the jury on the verdict form. (July 14, 2023 Tr. Vol. IV at 364.) The trial court merged that count and the obstructing official business count with the first two counts, assault and the other charge of failing to comply with an order of a police officer. (July 19, 2023 Jgmt. Entry.) The trial court sentenced Mr. Paul to 18 months for the assault conviction, a fourth-degree felony, and 6 months on the failing to comply with an order of a police officer conviction, a first-degree misdemeanor, to be served consecutively at the Ohio Department of Rehabilitation and Correction. *Id.* at 2.

{¶ 14} On July 26, 2024, the trial court issued an order captioned "Nunc Pro Tunc Judgment Entry – Termination for Time Served." The entry stated that its previous sentence was "improper" because it "violat[ed] the mandate of R.C. 2929.41(A) that misdemeanor sentences must be applied concurrently to felony imprisonment." (July 26, 2024 Nunc Pro Tunc Jgmt. Entry at 1.) Noting that Mr. Paul had completed his felony sentence, the trial court ordered Mr. Paul's release from the Franklin County jail, where he had been recently transferred from a state prison. *Id.*

{¶ 15} Mr. Paul filed a timely appeal from the original sentence and asserts the following assignments of error:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF FAILURE TO COMPLY WITH ORDER OR SIGNAL OF PEACE OFFICER; OBSTRUCTING OFFICIAL BUSINESS; AND ASSAULT, AS THOSE VERDICTS WERE NOT

SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY IMPOSING A PRISON SENTENCE NOT AUTHORIZED BY STATUTE.

## II.  FIRST ASSIGNMENT OF ERROR

{¶ 16} In the first assignment of error, Mr. Paul argues that that the evidence was legally insufficient to support his convictions and that his convictions were against the manifest weight of the evidence.  "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."  *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.  "A challenge to the sufficiency of the evidence involves the prosecution's burden of production, while a challenge to the weight of the evidence involves the prosecution's burden of persuasion."  *State v. Petty*, 2012-Ohio-2989, ¶ 23 (10th Dist.).  Thus, the concepts require different standards of analysis.  We will first address sufficiency.

{¶ 17} To test the sufficiency of the evidence, a reviewing court must ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.)  *State v. Bertram*, 2023-Ohio-1456, ¶ 8, quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Legal sufficiency is a question of law that asks whether the state's evidence passes a "test of adequacy."  *Thompkins* at 386.  A conviction resulting from "legally insufficient evidence constitutes a denial of due process."  *Id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 45 (1982) ("the Due Process Clause forbids any conviction based on evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable doubt").  A reviewing court "will not disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' "  *State v. Ketterer*, 2006-Ohio-5283, ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).  "A challenge to the sufficiency of the evidence is reviewed de novo."  *Bertram* at ¶ 8, citing *State v. Dent*, 2020-Ohio-6670, ¶ 15.

{¶ 18} We begin with the assault charge.  Mr. Paul was indicted on one count of assault, alleging that he "did knowingly cause or attempt to cause physical harm to Robert King."  (May 18, 2021 Indictment.)  The indictment further alleged that the offense was a fourth-degree felony because the victim was a peace officer.  *Id.*  The allegation in the

indictment accurately reflected the definition of assault under R.C. 2903.13(A), which states: "No person shall knowingly cause or attempt to cause physical harm to another . . ." And, under R.C. 2903.13(C)(5)(a), assault against a peace officer is a fourth-degree felony if it is committed "while in the performance of the officer's . . . official duties."

{¶ 19} The officers' testimony, which must be viewed in a light most favorable to the prosecution, was legally sufficient to prove the offense of assault. Officer King testified that after he put his hand inside the car, Mr. Paul began to roll the window up and started driving away, at which point Officer King had to break the window to free himself from the moving vehicle. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). A rational jury could conclude that a defendant who rolls up the window of a car and then accelerates to drive away is aware that those actions could cause physical harm to a person with a hand inside the vehicle. Furthermore, physical harm includes "any injury . . . regardless of its gravity or duration." R.C. 2901.01(A)(3). A rational jury could conclude that Officer King's description of his hand as swollen, causing extreme pain, and being constrained by a brace for two weeks met the definition of physical harm. Finally, Officer King testified that he was a law enforcement officer, which any rational jury would conclude satisfies R.C. 2903.13(C)(5)(a) and elevates the offense to a fourth-degree felony.

{¶ 20} The state also presented evidence that was legally sufficient for a rational jury to convict Mr. Paul of two counts of failure to comply with an order or signal of a police officer, as alleged in the indictment.[1] R.C. 2921.331(B) states: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." After refusing to get out of the vehicle, Mr. Paul began to accelerate. Both Officer King and Detective Relli testified that they told Mr. Paul to stop, but he continued to drive away. A rational jury could conclude that their directives constituted audible signals to stop the car. In addition, Detective Relli testified that the lights and sirens from her cruiser were activated during the chase, which a rational jury could conclude was a visible signal to stop. The jury also reviewed the video from the cameras that the officers were wearing that recorded these

---

[1] The indictment stated one count under R.C. 2921.331(B) as a third-degree felony based on an allegation that Mr. Paul was fleeing after the commission of a felony, and another count as a third-degree felony. As noted, based on the language of the verdict forms, the trial court reduced the convictions to first-degree misdemeanors under R.C. 2921.331(A) before merging them. (Tr. at 363-64.)

interactions. In spite of these visible and audible signals, Mr. Paul continued to flee from the officers until he lost control of the vehicle. A rational jury could conclude that he willfully eluded their audible admonitions to stop by accelerating the vehicle in response and fled from them. Thus, the officers' testimony, in addition to the video, constituted evidence that was legally sufficient to prove the counts of failure to comply with an order or signal of a police officer.

{¶ 21} Finally, the state presented sufficient evidence for a rational jury to convict Mr. Paul of obstructing official business. R.C. 2921.31(A) states: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Normally a second-degree misdemeanor, the offense is elevated to a fifth-degree felony if "a risk of physical harm to any person" results from its commission. R.C. 2921.31(B).

{¶ 22} Here, both officers testified that they arrived to execute a warrant for Mr. Paul's arrest, in an attempt to perform their lawful duties as police officers. *See State v. Johnson*, 2017-Ohio-5527, ¶ 33 (10th Dist.) (holding that "fleeing from a police officer who is lawfully attempting to detain a suspect under the authority of *Terry* is an affirmative act that hinders or impedes the officer in the performance of the officer's duties and constitutes a violation of R.C. 2921.31"). While they attempted to detain him, Mr. Paul fled and, in the process, physically harmed Officer King. By doing so, the evidence showed that Mr. Paul did more than create a risk of physical harm. The testimony of the officers was legally sufficient to prove that Mr. Paul violated R.C. 2921.31.

{¶ 23} Mr. Paul has also challenged the manifest weight of the state's evidence. The manifest weight of the evidence analysis requires the appellate court to consider the state's evidence as an additional, or "thirteenth juror. " *Thompkins*, 78 Ohio St.3d at 387. "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks,* 2018-Ohio-1562, ¶ 168, citing *Thompkins* at 387. Reversal on manifest weight grounds is appropriate " 'only in the exceptional case

in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 24} Here, Mr. Paul has not identified any conflicting evidence that undermines the weight of the state's evidence. Nor has he challenged the credibility of the officers' testimony. Our review of the evidence admitted reveals no deficiencies to support a manifest weight challenge.

{¶ 25} Mr. Paul's only argument is that Officer King "ignored his training and experience by reaching into" the car, and therefore the officer's "subsequent injuries and the brief pursuit . . . were directly attributable to [Officer King's] willful decision to ignore not only common sense but his extensive training and experience." (Brief of Appellant at 2-3.) This argument does not address the manifest weight of the evidence the jury relied on to convict Mr. Paul. Officer King admitted that reaching into the car contradicted his training directives, but that fact does not exonerate Mr. Paul or qualify as a defense to any of his crimes. Although possibly ill-advised, the officer's split-second decision was an attempt to prevent Mr. Paul from fleeing in a vehicle and the ensuing risk of harm to others potentially resulting from a car chase through a residential neighborhood. Thus, Officer King risked his own safety in an attempt to prevent Mr. Paul from harming others. The criminal responsibility for the physical harm to the officer was not attributable to any action other than that of Mr. Paul when he rolled up the window and fled, knowing that the officer's arm was still inside the vehicle. The only "willful decision" here was Mr. Paul's decision to flee instead of complying with the officers, which resulted not only in injury to Officer King, but also in the criminal offenses he committed and the jury's convictions. *Id.* Finding no merit to his assertion of legally insufficient evidence or his challenge to its manifest weight, the first assignment of error is overruled.

## III. SECOND ASSIGNMENT OF ERROR

{¶ 26} In Mr. Paul's second assignment of error, he argues that the trial court erred by sentencing him to state prison instead of the county jail for the misdemeanor charge, and by imposing the misdemeanor sentence consecutive to the felony sentence.

{¶ 27} In its original briefing, the state conceded the latter point and argued that the need for resentencing to correct the error mooted Mr. Paul's second assignment of error. However, the trial court subsequently entered a nunc pro tunc entry purportedly correcting the sentencing error and ordering Mr. Paul's release before he could be transferred from a

state prison to the county jail to serve the misdemeanor sentence. (July 26, 2024 Nunc Pro Tunc Jgmt. Entry.)  In supplemental briefing, the state now argues that the trial court "exceeded the scope of its nunc pro tunc authority" because the entry made a substantive correction to Mr. Paul's sentence, which it had no jurisdiction to alter after entry of the original judgment.  (Aug. 19, 2024 Supp. Brief at 2.)  "This Court should not find an argument moot based on a legally null entry," the state argues, thus "the trial court should correct the error pursuant to a remand from this Court, not via an improper mid-appeal nunc pro tunc entry."[2]  *Id.* at 4.

{¶ 28} R.C. 2929.41(A) provides that "a jail term or sentence of imprisonment for misdemeanor shall be served concurrently with a prison term or sentence of imprisonment for felony served in a state or federal correctional institution," unless a statutory exception applies.  *State v. Polus*, 2016-Ohio-655, ¶ 10 (holding that "subject only to the exceptions stated in R.C. 2929.41(B)(3), a trial court must impose concurrent sentences for felony and misdemeanor convictions").  In contrast to felony sentences, which are typically served in state prisons, misdemeanor sentences are to be served in county or municipal jails.  *Compare* R.C. 2929.34(A) and (B)(1) (requiring most felony sentences, with some exceptions, to be served in institutions run by the Ohio Department of Rehabilitation and Correction) *with* R.C. 2929.34(C) (requiring misdemeanor sentences to be served "in a county, multicounty, municipal, municipal-county, or multicounty-municipal jail or workhouse," with some exceptions).  The judgment entered after sentencing violated both provisions by ordering Mr. Paul's sentences to be served consecutively in a state prison.

{¶ 29} Although well-intentioned, the trial court's attempt to correct its error in a nunc pro tunc entry was improper.  "A *nunc pro tunc* order may be issued by a trial court, as an exercise of its inherent power, to make its record speak the truth.  It is used to record that which the trial court did, but which has not been recorded."  *State v. Greulich*, 61 Ohio App.3d 22, 24 (9th Dist. 1988).  In addition to a trial court's inherent authority to correct judgments by nunc pro tunc entries, Crim.R. 36 states: "Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time."  Here, however, the trial court's entry did not correct a clerical mistake.  Nor did the entry record what the trial court did, but

---

[2] Although provided the opportunity, Mr. Paul's appellate counsel did not file a response to the state's supplemental brief.

instead recorded what it had failed to do: impose concurrent rather than consecutive sentences. *See Greulich* at 24 (stating that "a *nunc pro tunc* order is limited to memorializing what the trial court actually did at an earlier point in time"). As the entry stated, Mr. Paul's original sentence was "improper." (Nunc Pro Tunc Jgmt. Entry.) However, the trial court did not have the authority to correct the error itself. "Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal." *In re S.J.*, 2005-Ohio-3215, ¶ 9, citing *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978). Thus, the entry is, as the state argues, a legal nullity.

{¶ 30} Although Mr. Paul has been released from incarceration and will serve no more time, the trial court must still correct its error by resentencing him after remand. Even after a defendant's release, "so long as a timely appeal is filed from the sentence imposed, the defendant and the state may challenge any aspect of the sentence and sentencing hearing, and the appellate court is authorized to modify the sentence or remand for resentencing to fix whatever has been successfully challenged." *State v. Holdcroft*, 2013-Ohio-5014, ¶ 9. *See also State v. Christian*, 2020-Ohio-828, ¶ 18 (applying *Holdcroft* to appellant who had served entirety of time imposed on one of three counts during pendency of direct appeal where all counts were to be resentenced after remand, as appellant "had no expectation of finality in those portions of her original sentence, and the trial court had the ability and obligation to resentence her on those counts on remand"). The second assignment of error is sustained.

## IV. CONCLUSION

{¶ 31} Based on the foregoing, we overrule the first assignment of error and sustain the second assignment of error. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to the trial court for resentencing.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

BEATTY BLUNT and BOGGS, JJ., concur.

————————————